## UNITED STATES v. BALTIMORE & OHIO RAIL-ROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF WEST VIRGINIA.

No. 118.  Argued October 19, 20, 1911.—Decided June 10, 1913.

A judgment dismissing, on the merits, an equity action brought by the Secretary of War against a railroad company to declare a bridge over a navigable stream to be an unreasonable obstruction and to require its removal under the act of March 3, 1899, on the ground that the provisions of the act did not apply, *held*, in a criminal trial on an indictment charging the same party with violating the penal provisions of the said act, to be *res judicata* and decisive of the question.

*Quære*, how far if at all a statutory grant to erect a bridge over navigable waters of the United States on specified terms in an act of Congress without reservation of the right to alter or amend, operates to limit Congress to directly legislate as to removal or alteration of such bridge.

*Quære* what the effect is on subsequent action by Congress of a decree of a court in an action determining that a bridge was properly erected over a navigable stream pursuant to grant in an earlier act of Congress.

THE facts, which involve the construction of provisions of the act of March 3, 1899, in regard to the authority of the Secretary of War to require alteration of bridges over navigable waters of the United States, are stated in the opinion.

*Mr. Assistant Attorney General Harr* for the United States.

*Mr. B. M. Ambler*, with whom *Mr. W. W. Van Winkle* and *Mr. M. G. Ambler* were on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This writ of error seeks the reversal of a judgment discharging the defendant in error here from further prosecution under an indictment which alleged a violation of the act of March 3, 1899, 30 Stat. 1151, c. 425, in refusing to alter, as directed by the Secretary of War, a bridge across the Ohio River, connecting Parkersburg, West Virginia, and Belpre, Ohio. The case was tried to a jury, and at the close of the evidence, by direction of the court, a verdict of not guilty was returned, whereupon the judgment was entered which is under review.

The facts established by the evidence, so far as material to be stated, may thus be summarized.

The bridge in question was completed in the year 1871, in full compliance with an act of Congress approved July 14, 1862, 12 Stat. c. 167, p. 569, which prescribed the height, width of span and other requirements for bridges erected above the Kentucky line (mouth of Big Sandy River) and in § 5 it was provided: that "any bridge or bridges erected under the provisions of this act shall be lawful structures, and shall be recognized and known as post-routes  .  .  .  and that officers and crews of all vessels, boats, or rafts navigating the said Ohio River are required to regulate the use of said vessels and of any pipes or chimneys belonging thereto, so as not to interfere with the elevation, construction or use of any of the bridges erected or legalized under the provisions of this act." The act contained no express reservation of right to alter or amend it in any respect.

On October 29, 1904, the United States Attorney for the Northern District of West Virginia, by direction of the Attorney General, filed in the Circuit Court of the United States for the Northern District of West Virginia a bill of complaint on behalf of the United States against the

Parkersburg Branch Railroad Company, a West Virginia corporation, John W. Davis, its receiver, and the Baltimore & Ohio Railroad Company. The bill in effect .charged that the bridge in question was owned, operated.and controlled by the defendants, that the bridge had been constructed under the act of 1862, and averments were made as to . the provisions of various statutes subsequently passed by Congress concerning the construction of.bridges across the Ohio River, viz., § 7 of the act of December 17, 1872, 17 Stat. 398, c. 4, and §§ 2 and 4. of the act of February 14, 1883, 22 Stat. 414, c. .44, and the provisions of other statutes conferring additional powers upon the Secretary of War in regard to the control and regulation of the navigable waters of the United States, viz., §§ 4 and 7 of the act of September 19, 1890, 26 Stat. 426, c. 907, and § 9 of the act of March 3, 1899, 30 Stat. 1151, c. 425. In substance it was charged that the spans of the bridge in question—the present main span being 349 feet in .width..and the adjacent span of the same width—were wholly inadequate to accommodate the present commerce of the Ohio River at the point where built and constituted a serious and dangerous obstruction to the navigation of the Ohio River at such point, and it was averred that the Secretary of War under the supervisory power conferred upon him by the statutes referred to "in recent years has required that all bridges over the Ohio River shall have channel spans ranging from six hundred to eight hundred feet in length." It was further averred that the railroad company, under the pretense of renewing the old bridge was erecting a new structure on the site of the old, despite the.fact that the Government "through its proper officers " had refused to grant authority so to do, except "on condition of removing the pier between spans 38 and 39 of the said bridge and uniting spans 38 and 39 in one span, thus making the channel span to the said bridge approximately 698 feet. It was also alleged "that the construction of

this proposed new bridge, without the consent or approval of the United States, to which is entrusted by the Constitution the protection of this great waterway of commerce among the several States, will be in violation of law, and to the great and irreparable injury of the United States and the commercial interests entrusted to its care." The prayer of the bill was as follows:

"Your orator avers that there is no adequate remedy at law in the premises, and therefore prays that a temporary restraining order enjoining the defendants, their agents, servants, employés, workmen, contractors, and others whomsoever, from constructing or proceeding to construct the contemplated bridge or any bridge across the Ohio River from Parkersburg to Belpre, with a channel span of not less than 698 feet, and without the consent of Congress and the approval of the Secretary of War and the Chief of Engineers, until the final hearing of this cause, when your orator prays that such temporary injunction may be made perpetual; and that the existing bridge operated by the said railroad company between Parkersburg, West Virginia, and Belpre, Ohio, be declared and decreed to be an unreasonable obstruction to the navigation of the Ohio River, and that the said railroad company be required within a reasonable time to remove the same, or replace same with such a bridge as shall conform to existing law. And your orator prays for such other relief as may be proper in the premises."

The defendants, in their answer, recited the history of the bridge and alleged it to be a lawful structure, and averred that under the authority vested by the act of 1862, they possessed the right to maintain the bridge not only during the life of the first superstructure thereof, but by the renewal of the superstructure from time to time as might be required for the maintenance of the bridge as a post route, etc. It was expressly averred that the defendants were proceeding merely to renew the superstructure

of the bridge by providing a steel superstructure of much
greater weight and strength, than that now in use, and
that it was not contemplated or intended to make any
change whatever in the piers of the bridge, any lowering
of the height of the channel spans, or any other change
which in any respect or in any degree will, or can possibly
affect the navigation of the Ohio River at the point where
the bridge stands.

The motion for a permanent injunction as prayed in the
bill was heard upon bill, answer and affidavits, and was
decided on February 4, 1905, in an opinion by District
Judge Jackson. The injunction was refused. (134 Fed.
Rep. 969.) It was held that the construction of the bridge
under the authority conferred by the act of 1862 created a
vested right to the use of the bridge of which the defend-
ants could not be deprived without just compensation.
It was also held that the defendants were not building or
attempting to build a new bridge, but were simply replac-
ing the old superstructure and that "the right to repair
the bridge, to alter it or to improve it, for the safety of the
public, is incident to the power to build it." The court
thus concluded the opinion (p. 972):

"It must appear from what we have said that an in-
junction furnishes no remedy for the grievances com-
plained of in the bill. This is the third application that
has been made for an injunction, before the judges of this
court, against the Baltimore & Ohio Railroad Company,
involving the act of 1862. Judge Goff heard the case of
the United States against the Baltimore & Ohio Railroad
Company, which was an application for an injunction to
prevent reconstruction of the Benwood Bridge. He dis-
missed the bill on March 27, 1900. Judge Goff and I
heard the case of the Baltimore & Ohio Railroad Company
against Leidecker, one of the United States engineers, in
which the same question was involved, in which, upon a
review of the case decided by Judge Goff, as well as the

case then under consideration, we reached the conclusion that the United States could not interfere with the reconstruction of the superstructure of the bridge which was built under the act of 1862. And now we have this application, which I have under consideration, involving the same question. It would seem to me that the action of the court heretofore had in previous cases should be adhered to in this case. In all the cases the judges of this court, either sitting alone or together, have reached the conclusion that the act of 1872 and those acts subsequent thereto do not in anywise affect the rights of the Baltimore & Ohio Railroad Company in relation to any and all of the bridges built under the act of 1862.

"For the reasons assigned, the court is of the opinion to refuse the injunction in this case, and suggests that the only remedy is to apply to Congress for an act to remove the bridge, if it is such an obstruction to navigation as to justify their action, upon such terms and conditions that the Baltimore & Ohio Railroad Company should receive compensation for the destruction of the bridge."

A decree denying the motion for a permanent injunction was entered on February 27, 1905, and an appeal therefrom was prosecuted to the Circuit Court of Appeals. The assignment of errors filed in that court, omitting title of cause and signature of attorneys, is as follows:

"And now on the 14th day of March, 1905, comes the said plaintiff, the United States of America, by Reese Blizzard, United States attorney for the Northern District of West Virginia, duly authorized to appear in this behalf by the Attorney General of the United States, and says:

"That the decree entered in said cause is erroneous and against the just rights of the said plaintiff for the following reasons:

"First. Because the court erred in overruling and denying the motion of the plaintiff to grant the permanent in-

junction prayed for by the plaintiff's bill, and heard on the 30th day of November, 1904.

"Second. Because the evidence showed that the said bridge was a serious and unreasonable obstruction to the navigation of the Ohio River, a navigable river of the United States.

"Third. Because the court erred in entering the order entered by it of record in the said cause on the 27th day of February, 1905.

"Wherefore the said plaintiff prays that the said decree be reversed and that the said court may be directed to enter a decree in accordance with the prayer of the bill."

The appeal was decided on February 6, 1906, and, substantially upon the grounds upon which the Circuit Court rested its conclusions, it was held that error was not committed in refusing to grant the injunction. 143 Fed. Rep. 224.

Nine months after the decision of the Circuit Court of Appeals, just referred to, the Secretary of War—assuming to act under the authority of § 18 of the River and Harbor Act of March 3, 1899—gave to the railroad company, the defendant, the notice the failure to obey which was made the basis of the indictment. The notice stated that the bridge in question was an unreasonable obstruction to the free navigation of the Ohio River, on account of insufficient length of channel spans, and ordered "the removal of pier No. 38, and the conversion of spans Nos. 38 and 39 into one channel span," by December 1, 1908.

The case was heard upon an agreed statement of facts practically embodying the essential facts presented in the equity cause and the other facts to which we have referred above; and the record in the equity cause was admitted in evidence over the objection of immateriality and an exception by the Government. It was also agreed that the necessary cost and expense of altering the bridge in the manner specified in the notice of the Secretary of War

"would exceed five hundred thousand dollars, and would entail great loss and inconvenience to the defendant in the conduct of its business." At the close of the evidence, the court, as we have stated, instructed the jury to return a verdict of not guilty which was done.. The instruction rested upon the hypothesis "that the legal and vested right to maintain this bridge in its present condition has been judicially determined by courts of competent jurisdiction" in the equity cause to which we have referred; To the action of the court, the United States duly excepted. Thereupon judgment was entered discharging the railroad company from further prosecution upon the indictment, etc., and this direct writ of error was sued out as authorized by the act of 1899.

In substance, it is assigned that the court erred in admitting in evidence the record in the equity case and in instructing the jury to acquit the defendant. As the Circuit Court based its action in directing the verdict of not guilty upon the doctrine of *res judicata*, it is apparent that the effect of the proceedings in the equity cause is the matter to be determined.

The section of the River and Harbor Act of March 3, 1899, 30 Stat. 1121, 1153, c. 425, from which the authority to issue the notice in question was derived, reads as follows: .

"Sec. 18. That whenever the Secretary of War shall have good reason to believe that any railroad or other bridge now constructed or which may hereafter be constructed, over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw opening or the draw span of such bridge by rafts, steamboats, or other water craft, it shall be the duty of the said Secretary, first giving the parties reasonable opportunity to be heard, to give notice to the persons

or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy, and unobstructed; and in giving such notice he shall specify the changes recommended by the Chief of Engineers that are required to be made, and shall prescribe in each case a reasonable time in which to make them. If at the end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States district attorney for the district in which such bridge is situated, to the end that the criminal proceedings hereinafter mentioned may be taken. If the persons, corporation, or association owning or controlling any railroad or other bridge shall, after receiving notice to that effect, as hereinbefore required, from the Secretary of War, and within the time prescribed by him wilfully fail or refuse to remove the same or to comply with the lawful order of the Secretary of War in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars, and every month such persons, corporation or association shall remain in default in respect to the removal or alteration of such bridge shall be deemed a new offense, and subject the persons, corporation, or association so offending to the penalties above prescribed: *Provided,* That in any case arising under the provisions of this section an appeal or writ of error may be taken from the district courts or from the existing circuit courts direct to the Supreme Court either by the United States or by the defendants."

Two Attorneys General have delivered opinions that this act was not applicable to the bridge here in question. 22 Opin. Atty. Gen. 346; 25 *Ib.* 194.

Unlike the statutes thereafter enacted nowhere in the act of 1862, by which the authority to build the bridge was conferred and under which it was built, was there an

express reservation of a right to alter or amend the act in any respect. So, also, it is not questioned that the bridge was constructed in exact conformity to the requirements of the statute and that it has been so maintained ever since. No statute has been passed expressly condemning the structure as an obstruction to navigation, or ordering its removal or alteration. Indeed when the equity cause was commenced the act of March 3, 1899, was operative and under its provisions prior to the commencement of that suit the Secretary of War had been seeking to compel the railroad company to alter the bridge precisely in the mode directed in the notice upon which the indictment at bar is based. It is not contended that the institution of the equity cause was directed by Congress and it manifestly was brought directly or indirectly through the procurement of the Secretary of War in order to carry into effect his conception of his duty to compel the radical alterations deemed essential to be made in the width of the channel spans. An issue plainly presented in the equity cause was whether the bridge in question was subject to the act of 1899, and was within the jurisdiction of the Secretary of War under that act and whether the Government had the right to enforce the decision of the Secretary, that pier 38 should be removed and one span made from pier 37 to pier 39; and among other things the defendant denied that the act of 1899 had application or that the Secretary possessed jurisdiction in the premises. The final adjudication of the Circuit Court of Appeals necessarily decided this issue adversely to the Government, and conclusively determined as between the parties that the Secretary had no power over the bridge and that the structure in its present condition was not subject to the act of 1899. We are of opinion, therefore, that as against action by the Secretary of War, the decree in the equity cause was properly held to be *res judicata* as to the facts averred in the indictment and as decisive of the question,

that in the absence of changed conditions the bridge in question was not subject to the act of 1899. How far, if at all, the grant of the right to build the bridge under the terms specified in the act of 1862, with no reservation of the right to alter or amend, will operate to limit the power of Congress to directly legislate on the subject of the removal or alteration of the bridge is a question we are not here concerned with and therefore express no opinion upon it. And of course, we also express no opinion as to how far the decree in the equity cause would be applicable in case of such direct action by Congress.

*Judgment affirmed.*

MR. JUSTICE PITNEY, not being a member of the court when this case was argued, took no part in its consideration.