**UNITED STATES v. McGEE et al.**
Cr. No. 6247.

United States District Court
D. Wyoming.
Nov. 10, 1953.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for plaintiff.

Alfred M. Pence, Laramie, Wyo., for defendant Fred F. McGee.

**28**

J. D. Fitzstephens, Cody, Wyo., for defendant Ernest J. Goppert.

KENNEDY, District Judge.

The above entitled case is before the Court on a joint motion of defendants for a bill of particulars and for a dismissal of the indictment upon grounds therein set forth. Upon the hearing the motion for bill of particulars was confessed and the same was filed instanter by the attorney for plaintiff. The motion of defendants for dismissal was argued orally and memorandum briefs submitted, which are before the Court for consideration.

An intelligent discussion of the points involved seem to necessitate a review of the facts upon which the motion seems to be based. The defendants were indicted in May 1952 on a charge of conspiracy and thereafter on pleas of not guilty were tried at the Sheridan Term of the court in August 1952, resulting in a disagreement of the jury, and they were thereupon discharged. At the close of the evidence motions for acquittal were interposed and overruled by the Court, who elected to send the case to the jury for consideration. This action was taken by the Court with the realization that the matter would still be within its control should the Court decide upon more mature consideration that the grounds of the motion were well taken. It was realized that should the jury find a verdict of not guilty under these circumstances the case would be ended. Thereafter the defendants timely interposed their written motion for a judgment of acquittal upon the ground that the evidence in the case was not sufficient to justify a verdict of guilty. This motion was evidently taken in accordance with Rule 29(b) of the Federal Rules of Criminal Procedure, 18 U.S.C. A., which reads as follows:

"(b) Reservation of Decision on Motion. If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the motion is denied and the case is submitted to the jury, the motion may be renewed within 5 days after the jury is discharged and may include in the alternative a motion for a new trial. If a verdict of guilty is returned the court may on such motion set aside the verdict and order a new trial or enter judgment of acquittal. If no verdict is returned the court may order a new trial or enter judgment of acquittal."

In this respect the Court and counsel seem to have followed this provision of the rule strictly. The motion was subsequently heard and sustained, the Court giving in a memorandum filed in the case its reasons why the motion should be sustained and a verdict of acquittal was thereupon entered discharging the defendants and their bondsmen. This action of the Court in that case has been deemed important here by counsel for the purpose of determining in advance whether or not the action of the Court there was a final determination of that case in view of the fact that a subsequent indictment was found against the same defendants involving similar charges and the same circumstances as were presumed to be litigated in the former case.

In that light I have considered the former case, 108 F.Supp. 909, No. 6118 Criminal, for the purpose of determining the point presented. The controlling factor in that case was that the indictment alleged but one overt act, which upon the trial it was shown occurred a considerable time after the alleged conspiracy, if there was one, had been completed with no connection in the evidence showing that the alleged overt act was a part of the conspiracy charged and therefore under the law could not be relied upon as an overt act, which must be established by the same manner of proof as the conspiracy itself. Reviewing the memorandum filed at the time I am sat-

isfied that the motion for judgment of acquittal was made upon the entire record and the evidence presented in the case, and that the Court at the time so understood it and passed upon the motion with the evidence in that case befor it. The memorandum shows this repeatedly, that the Court considered the motion as based upon the evidence in the trial and came to its conclusion accordingly. My view is, under these circumstances, that the judgment upon the motion was as effective as such as though the jury had itself returned a verdict of not guilty. This seems to be the reasoning within the scope of Rule 29(b). As a matter of fact, the jurisdiction conferred upon the Court under Rule 29 is as absolute in regard to a judgment of acquittal as the verdict of a jury. Counsel for the government contends that the judgment of acquittal entered by the Court was upon technical grounds and that "the case fell, however, because for *technical reasons* only, the indictment was not sufficient to fit the facts actually presented". This seems to me an erroneous and at least a back-handed way of stating the legal proposition. It would be correct to say that the case failed because the proofs were not sufficient to sustain the allegations of the indictment. The indictment on its face was sufficient in every particular and no one could tell until the proofs were presented at the trial but that the matter alleged as an overt act was not in fact a part of the conspiracy, in which respect the proof failed because the overt act under the proofs took place after the conspiracy, if any, had been completed. For the reasons stated the judgment of acquittal in that case must be held to have been upon the merits, rather than upon any technical grounds.

The matter becomes important here because of the fact that it is the basis of a claim for double jeopardy in that it is claimed that the second indictment now challenged, alleges the same offenses contained in the indictment in the former case. This leads to the necessity of a comparison and consideration of the two indictments. In case No. 6118 Criminal it is alleged that the two defendants did conspire with each other and divers other persons unknown to defraud the United States of America and the Reconstruction Finance Corporation by aiding and abetting Alford F. Leggett and Motor Sales Company in procuring from the Reconstruction Finance Corporation loans contrary to the provisions of the Act for the purpose of personal gain and secreting from the Reconstruction Finance Corporation the true condition of the Motor Sales Company and Leggett and in furtherance of said conspiracy removing collateral previously pledged to support the loan. It will be noted that only one overt act is charged in that indictment and also that the alleged conspiracy took place between the 22nd day of January 1948 and the 17th day of November 1950. The challenged indictment in the case at bar is in the form of three counts, in which in the first count it is charged that the defendants between January 28, 1948, and July 28, 1949, conspired with each other and divers persons unknown to defraud the United States and the Reconstruction Finance Corporation by aiding and abetting one Leggett and the Motor Sales Company in procuring a loan from the Reconstruction Finance Corporation contrary to provisions of law for personal gain for themselves by falsely representing the true financial condition of the Motor Sales Company and Leggett and in furtherance of said conspiracy setting forth seven overt acts, all of which I think the record in No. 6118 Criminal will show were offered as proof of the alleged conspiracy in the trial of that case. In count two a conspiracy is alleged upon the same ground as alleged in count one but as having taken place between July 28, 1949, and November 14, 1950, in which respect there is set forth thirteen different overt acts, the proofs of which I think the record will show in case No. 6118 Criminal were offered as tending to support the conspiracy charge in that case. It should be noted, however, that as to the dates in count two

it is set forth as a separate and distinct conspiracy from that alleged in count one.

In count three the same basic allegations as to the conspiracy are set forth but as occurring between different dates, beginning on February 27, 1950, and extending to December 1, 1950, but in addition allegations that it was a part of that conspiracy to dispose and convey things of value of the United States, towit: the accounts and notes receivable, assigned to the Reconstruction Finance Corporation and setting forth seven separate overt acts, the proof of which I think the record in case No. 6118 Criminal will show was offered and received in evidence.

The question is—were the facts alleged in the indictment in this case and the so-called repetition of the charge made in a sense coincident or the same so that the judgment of acquittal in No. 6118 Criminal would create a situation amounting to a double jeopardy under Amendment V to the Constitution of the United States: " * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * * ."

For the purpose herein stated a comparison of the indictment in No. 6118 Criminal, together with the proofs offered in support of the same, should be compared with the indictment in the case at bar. The defendants are the same in the case at bar as in the former case and the parties alleged to have been aided and abetted are the same in both cases. It is noted that the allegations in No. 6118 Criminal and in counts one and two in the present case are essentially the same in stating that the conspiracy was to assist in procuring loans from the Reconstruction Finance Corporation by false representation and secreting from the Reconstruction Finance Corporation the true financial condition of the borrowers, while in count three in the present case the same allegations are made by adding the matter of disposition and conveyance of things of value of the United States and the Re-

construction Finance Corporation. The indictment in No. 6118 sets forth the date of the conspiracy as between the 22nd day of January 1948 and the 17th day of November 1950, while the indictment in the case at bar in count one in connection with one alleged conspiracy sets forth the dates of January 22, 1948, and July 28, 1949; in the second count as being between July 28, 1949, and November 14, 1950, and in the third count as being between February 27, 1950, and December 1, 1950. By this it will be seen that the alleged separate conspiracies set forth in the indictment under consideration covers substantially the same period of time as the first indictment. In No. 6118 Criminal it should be noted that the defendants are charged with aiding and abetting in securing loans from the Reconstruction Finance Corporation. In the present case count one seems to refer to a single loan and count two to the second loan from the Reconstruction Finance Corporation which the evidence in the trial of No. 6118 Criminal shows that a second loan of $94,000 was made which took up and merged the first loan. Thus, both loans were litigated as part of a conspiracy in the trial of No. 6118 Criminal.

■ Numerous cases have been cited by counsel upon the question of what is necessary to be determined in considering whether alleged crimes are identical. I think the cases cited justify the conclusion that in the federal courts the rule laid down in 22 C.J.S., Criminal Law, § 279, page 416, is amply supported:

"Several rules have been laid down by the authorities for determining whether the crimes are identical. One test is to ascertain whether the facts alleged in the second indictment would, if given in evidence, have warranted a conviction on the first, or whether the same evidence would sustain a conviction in each case. Thus, if the evidence which is necessary to support the second indictment was admissible under the former, was re-

lated to the same crime, and was sufficient if believed by the jury to have warranted a conviction of that crime, the offenses are identical, and a plea of former conviction or acquittal is a bar, but if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offenses charged may have been committed in the same transaction."

It would unduly extend the length of this memorandum to cite all the cases which sustain the rule announced. Considering the point in the light of the foregoing rule it seems to me that all of the evidence which will be necessary to support the second indictment was admissible under the indictment in No. 6118 Criminal and certainly related to the same crime. Likewise the evidence was sufficient in the first case, if believed by the jury, to warrant a conviction of that crime had there not been a failure of proof on the part of the government to tie in the alleged overt act to the conspiracy itself. The fact that the government may have in the present case some additional facts tending to support the conspiracy charge or additional overt acts is not important if the evidence offered in the first case along the same line would have been sufficient if believed by a jury to render a verdict of guilty thereon. This consideration by comparison of the two indictments in connection with the evidence offered in support of the trial upon No. 6118 Criminal seems to lead to no other conclusion but that the offenses charged in that case and in counts one and two in the present case are identical except that in the case at bar the attempt is made to split the single conspiracy theretofore alleged in the first indictment into three separate and distinct conspiracies in the second indictment: (1) alleging a conspiracy in regard to the first loan; (2) regarding the conspiracy in connection with the second loan; and (3) the conspiracy in converting to their own use and dispos-

ing of property of the United States and the Reconstruction Finance Corporation. These were all evidently encompassed within the indictment in No. 6118 Criminal because there the language used is in regard to *loans* and the evidence offered in that case covered both loans which are now sought to be segregated into two separate conspiracies. As to count three, the evidence in No. 6118 Criminal covered fully the transaction which was set forth in the indictment and as the sole overt act.

■ This situation presents the question as to whether or not the government in its indictment may successfully for the purpose of prosecution split the first conspiracy into three separate conspiracies and avoid the charge of double jeopardy. In 22 C.J.S., Criminal Law, § 288, page 433, the rule is laid down as follows:

"While a prosecution for conspiracy is no bar to a prosecution for a different conspiracy, a single conspiracy cannot be split up for the purpose of prosecution, and a prosecution for conspiracy to commit several offenses will bar a prosecution for a conspiracy to commit one or a less number of the same offenses."

In Powe v. United States, 5 Cir., 11 F. 2d 598, at page 599, it is said:

"The fact that the first indictment charged a conspiracy to commit several offenses is not sufficient to authorize a second prosecution under an indictment for conspiracy to commit one or a less number of the same offenses. (Citing case.) There cannot be a second prosecution for the same offense, even though that offense was only one of several set out in the first indictment. The reason is that defendant has been put in jeopardy as to each and every offense charged in the first indictment. Whether or not there was any evidence to support the charges, or any of them, is wholly immaterial."

Another case sustaining the point is found in the language of Judge Parker in Short v. United States, 4 Cir., 91 F.2d 614, at page 620 and again at page 621, 112 A.L.R. 969, where the following language is used:

"It is well settled that, where a continuing offense such as conspiracy is charged as having been committed within a stated period, an acquittal or conviction will bar another prosecution for the same offense alleged as having been committed within a period which overlaps any part of the former period. The reason is that proof of the commission of the offense during the overlapping period is sufficient to sustain a conviction under either of the indictments; and the accused is thus subjected to double jeopardy as to offenses committed within that period." (Citing cases.)

"The difference in the overt acts charged has been held in a few cases to differentiate the crimes as matter of law. (Citing cases.) These cases proceed upon the theory that, as proof of the overt acts charged under one indictment would not support conviction under the other, the offenses charged must be held different. We think, however, that these cases proceed upon a false assumption. It is true that proof of an overt act is necessary under the statute to a conviction, but the crime is the conspiracy and not the overt act."

Another interesting discussion by Chief Justice Stone of the Supreme Court is found in Braverman v. United States, 317 U.S. 49, at page 53, 63 S.Ct. 99, at page 101, 87 L.Ed. 23:

"For when a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

"The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects'. (Citing cases.) A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object. (Citing cases.) Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. (Citing cases.) The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, § 37 of the Criminal Code [18 U.S.C.A. § 371]. For such a violation, only the single penalty prescribed by the statute can be imposed."

■ If this analysis by comparison of the indictments in the two cases, coupled with the evidence submitted in the first case, be logical, then applying the doctrine laid down by the courts as to the matter of splitting a conspiracy charge into several conspiracies which were covered by the first indictment is not permissible in attempting to avoid the application of the rule of double jeopardy sought by the defendants and it will be so held.

■ One other contention made by defendants in their motion to dismiss is that the statute of limitations has run against the government as to counts one and two of the indictment, which statu-

tory limitation is three years next after the alleged offense was committed. 18 U.S.C.A. § 3282. Relying again upon the evidence produced in case No. 6118 Criminal it would appear that the conspiracy charge in that case of the defendants aiding and abetting in the matter of procuring loans for Leggett and the Motor Sales Company legally ended when the loans had been procured and the money realized therefrom had been disbursed, which occurred more than three years before the indictment in the present case was returned and the lack of proofs of the sole overt act having caused the first criminal case to fall because of not having been shown to be a part of the conspiracy charge it would seem that the plea of the statute as to counts one and two should be sustained and it will be so held.

There remains for consideration the offer of the record in a civil case in this court Numbered 3383 under the title of Cody Finance Co. v. Leggett, 116 F. Supp. 700. Objection was made to the receiving of this record upon the broad ground recognized by counsel that ordinarily the record in a civil case even involving the same transactions is not admissible in a criminal action for a variety of reasons, including the difference in parties, the method and measure of proofs, the weight of evidence, etc. It has been held, however, that there are variations in the general rule in which courts have held that judgments in civil actions under certain circumstances are admissible in criminal prosecutions involving the same transactions and become res judicata as to the matters decisive in the criminal action. Of many cases cited and used as exceptions to the general rule several are from state courts. However, as an example, a variation of the general rule is found in United States v. Baltimore & Ohio Railroad Co., 229 U.S. 244, 33 S.Ct. 850, 57 L.Ed. 1169, in which the syllabus summarizing the ruling of the Court reads:

"A judgment dismissing, on the merits, an equity action brought by the Secretary of War against a railroad company to declare a bridge over a navigable stream to be an unreasonable obstruction and to require its removal under the act of March 3, 1899, on the ground that the provisions of the act did not apply, held, in a criminal trial on an indictment charging the same party with violating the penal provisions of the said act, to be res judicata and decisive of the question."

The action of the Court at the time the offer was made was to receive the file of the case No. 3383 Civil in evidence over the objection of the government and later determine whether or not it was competent evidence to be considered on the motion for dismissal. Having been received in evidence it would appear proper to consider the nature of the point there discussed and decided, at least to determine its relevancy and application under the plea of the defendants as to count three of the indictment. In No. 3383 Civil, in which the Cody Finance Company was one of the plaintiffs and the Reconstruction Finance Corporation was one of the defendants, the issues through stipulation and otherwise narrowed down to these two litigants which were as to the ownership and right of possession of the accounts and notes receivable mentioned in the third count of this indictment. The defendant Goppert in the case at bar was the general manager of the Cody Finance Company in No. 3383 Civil and one Jerry Housel was the assistant manager, who acted principally under orders from Goppert or performed the duties of manager of that company when Goppert was absent. Goppert at the same time was Chairman of the Board of the First National Bank of Cody which through its president, the defendant McGee, was acting in an advisory capacity for the Reconstruction Finance Corporation in reporting the condition of the accounts and notes receivable of the Motor Sales Company from time to time although such accounts and notes receivable were left in the possession of said Motor Sales Company, having been

pledged as additional security for the second loan made by the Reconstruction Finance Corporation to the Motor Sales Company. The instrument of pledge was not placed upon the records in any way. Later an appeal was made to Goppert and his Cody Finance Company for an additional loan by Leggett for his company as a temporary matter and granted in the sum of about $30,000 with the accounts and notes receivable pledged for that loan. Goppert, for the Cody Company, when the situation became alarming in the financial condition of the Motor Sales Company took possession of these notes and accounts receivable and removed them to the office of the Cody Finance Company. The issue therefore was sharply drawn as to who had the right to the possession of these accounts and notes receivable and entitled to the collectible proceeds thereon. The Cody Finance Company claimed that on account of its lien and without notice of any former pledge it had the right of possession and entitled to exercise it, which was done, while the Reconstruction Finance Corporation contended that the officials of the Cody Finance Company had no right of possession and the collection of the same on account of its former pledge of which the officials of the Cody Finance Company had constructive notice or at least under the circumstances were charged with making a diligent investigation to satisfy themselves that no such former pledge was in existence. Upon the trial of case No. 3383 Civil the claim of the Reconstruction Finance Corporation was that the Cody Company had constructive notice or of circumstances which would justify reasonable inquiry that such accounts and notes were free of encumbrance. The proofs showed by the testimony of Goppert, the general manager of the Cody Finance Company, that he had no knowledge of any previous pledge having been made to the Reconstruction Finance Corporation of these accounts and notes receivable. From the testimony of the assistant manager, Housel, it appeared that he had been instructed by Goppert, the general manager, by phone, being absent at the time, to investigate the circumstances and find whether or not these notes and accounts were free and clear for security on the loan then sought and that he (Housel) did make inquiries from various sources, including the previous advice from Leggett, the pledgor, that the accounts and notes were free and clear so far as any former pledge was concerned; from an official at the First National Bank that there was no record in the bank indicating that these notes were held as security for the benefit of the Reconstruction Finance Corporation, as well as from other inquiries made of different individuals; and a search of the records of the county failed to reveal any evidence of a former pledge. The attack of the Reconstruction Finance Corporation in its pleading and proof did not purport to follow the hazardous road of attempting to prove that the knowledge of the official of one company or corporation could be imputed to him while serving as an official of another corporation and thereby attempting to prove constructive notice but relied upon the claim that there was sufficient knowledge under the circumstances to have required the party making the subsequent loan to make a careful and complete survey to ascertain whether any former claim or pledge existed. In the face of these proofs, which showed that such investigation had been made, coupled with the evidence that there was no actual notice on the part of the officials of the Cody Finance Company of such a pledge, the Court seemed justified in finding that under those circumstances as between two pledgees where the property was left in the hands and custody of the pledgor to handle as he pleased, that the pledgee who first took possession of the property pledged without notice should be entitled to the property and the resultant benefits derived therefrom. Under such circumstances it would seem it has been officially adjudged and decreed by a court of competent jurisdiction that the right and title to the accounts and

notes receivable were in the Cody Finance Company as against the claim of the Reconstruction Finance Corporation. This is in direct conflict with the claim of the plaintiff in the case at bar in the third count of the indictment that the defendants in the case at bar conspired to convert these accounts and notes receivable as being property of the United States and the Reconstruction Finance Corporation. Certainly if it were proven in the criminal case that the accounts and notes receivable were not at the time the property of the United States or the Reconstruction Finance Corporation a conviction upon that count could not take place or could not stand if the evidence failed to place the title and right of possession in the Reconstruction Finance Corporation. In this respect the judgment in No. 3383 Civil is directly upon the point which is set forth in the present indictment. It seems to me that nothing could be more direct as to the adjudication of a principal fact than the result of the judgment in the civil case. Shorn of technicalities as to the consideration of the judgment in that case it is as clearly upon the crucial point involved in the third count of the present indictment as anything could be and I think it is as impelling as the reasoning adopted in United States v. Baltimore & Ohio Railroad Co., supra. The fact, if it be such, that a notice of appeal has been filed in No. 3383 Civil does not alter the situation for consideration here as it still remains the judgment of the Court until reversed. For the reasons stated I think the case file in No. 3383 Civil where the exact point has been adjudicated upon which count three of the indictment solely rests is entitled to be received in evidence on the motion and it should be adopted as res judicata of the matters alleged in count three and justify the sustaining of the motion of dismissal of that count and it will be so ruled.

For the reasons stated the motion of the defendants for a dismissal of the indictment will be sustained and an order entered dismissing said indictment and discharging the defendants and their bondsmen.

An order will be entered giving counsel for defendants until November 17, 1953, within which to present the proper order and judgment indicated in this memorandum, allowing them the choice of presenting a simple order sustaining the motion for dismissal or to elaborate more fully upon the different grounds mentioned in the memorandum. Exceptions as of course will be allowed the plaintiff.