George SIMKINS, Jr., Phillip W. Cook, Leonidas Wolf, Samuel Murray, Arthur Lee, Jr., Lonnie Reynolds, William Holmes, Elijah Herring, Joseph Studivent, James Hagins, Plaintiffs,

v.

The CITY OF GREENSBORO, The Greensboro City Board of Education, and the Gillespie Park Golf Club, Incorporated, Defendants.

Civ. No. 1058.

United States District Court M. D. North Carolina, Greensboro Division.

March 20, 1957.

Kennedy & Kennedy, Winston Salem, N. C., for plaintiffs.

Herman C. Wilson, City Atty., H. J. Elam, III, John F. Yeattes, Jr., Robert F. Moseley, and Robert S. Cahoon, Greensboro, N. C., for defendants.

HAYES, District Judge.

■ The City of Greensboro and the Greensboro City Board of Education concede that they cannot own and operate the Gillespie Park Golf Course for the public and exclude the plaintiffs and other Negro citizens of Greensboro from these privileges on account of their color.

Although the golf course has been available to the public for many years, whether by design of otherwise, Negroes have been denied the enjoyment of the privilege.

The City of Greensboro, before Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, in an effort to comply with Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, erected in the City of Greensboro a nine hole golf course for Negroes, known as Nocho Park Golf Course but it cannot be deemed the equivalent of an 18 hole golf course like Gillespie Park Course which was restricted to white people.

The Board of Education leased the land it did not need for school purposes at the time to the City of Greensboro. Through Works Progress Administration, which furnished 65% of the cost, the City of Greensboro built the last nine holes and agreed not to sell or lease for private use this public property during its life of usefulness.

Some of the Negro citizens applied to the city authorities for permission to play on the Gillespie Park Course in 1949 and, because of opposition on the part of local citizens against Negroes playing on the course, after some negotiation, the City of Greensboro and City Board of Education entered into a lease contract whereby the entire golf course was leased to Gillespie Park Golf Club, a non-profit corporation which was organized solely for the purpose of taking the lease and maintaining and operating the course as a public golf course. G.S.N.C. § 55–11.

It is true the directors met with a quorum at first and fixed $60 for annual membership which permitted them to play without paying additional fees; also authorized $1 membership who would pay $1.25 green fees on holidays and weekends, and 75¢ on other days.

The records of the corporation do not disclose sufficient data to show if rules were really established and enforced in respect to membership. The evidence does clearly show that white people were allowed to play by paying the green fees without any questions and without being members. When Negroes asked to play, they were told they would have to be members before they could play and it clearly appears that there was no intention of permitting a Negro to be a member or to allow him to play, solely because of his being a Negro.

The six plaintiffs presented themselves at the desk of the man in charge of the golf course and laid down 75¢ each and asked to play, the first named plaintiff being a dentist and practicing his profession in Greensboro. But they were not given permission to play. They insisted on their right to play and played three holes. While playing the third hole, the manager came and ordered them to leave and they refused to go unless an officer arrested them. Whereupon the manager swore out a warrant charging each with trespass upon which they were tried, convicted and sentenced to 30 days in jail, the statutory limit, from which an appeal is pending in the Supreme Court of North Carolina.

The Negroes have not only been denied the privilege of the golf course but there is no intention on the part of the defendants to permit them to do so unless they are compelled by order of court.

■ This case presents two questions for determination. First are plaintiffs, being citizens and taxpayers of the City of Greensboro, entitled to the privilege of playing on the defendant's golf course as long as it is owned and used for the convenience of the citizens of Greensboro? Second. Can the defendants avoid giving equal treatment to the plaintiffs

in the use of the facility by leasing it to a private corporation or can the lessee deny plaintiffs the right to play solely on account of color and thereby accomplish a result which is denied to the owner.

It is conceded that the defendants ordinarily are not required to furnish a golf course for its citizens. If, however, it undertakes to do it out of the public treasury, it cannot constitutionally furnish the facility to a part of its citizens and deny it to others similarly situated. The plaintiffs as citizens of the City of Greensboro are entitled to the equal protection of the law and cannot be deprived of their rights solely on account of color. The doctrine of Plessy v. Ferguson, supra, of equal but separate facility has been overruled in Brown v. Board of Education, supra.

Before Brown v. Board of Education, supra, the Supreme Court held that the election laws of the State could not be delegated to a political organization and empower it to deny Negroes the right to participate in the primary, and the action of such an agency was State action within the meaning of the Fourteenth Amendment and that the discrimination against the Negroes violated the Amendment. Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 487, 76 L.Ed. 984. The members of the Supreme Court who declared that law were Chief Justice Hughes, and Associate Justices Brandeis, Stone, Roberts and Cardozo. It is appropriate to quote from Justice Cardozo's opinion:

"The test is whether they are to be classified as representatives of the state to such an extent and in such a sense that the great restraints of the Constitution set limits to their action.

"With the problem thus laid bare and its essentials exposed to view, the case is seen to be ruled by Nixon v. Herndon, supra [273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759], Delegates of the State's power have discharged their official functions in such a way as to discriminate invidiously between white citizens and black. Ex parte Virginia, supra [100 U.S. 339, 25 L.Ed. 676]; Buchanan v. Warley, 245 U.S. 60, 77, 38 S.Ct. 16, 62 L.Ed. 149. The Fourteenth Amendment, adopted as it was with special solicitude for the equal protection of members of the Negro race, lays a duty upon the court to level by its judgment these barriers of color."

To the same effect is Rice v. Elmore, 4 Cir., 165 F.2d 387.

The Fourth Circuit Court has ruled that public parks are controlled by the same principles of constitutional law as are controlling in public education. Dawson v. Mayor and City Council of Baltimore City, 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774. Again that court held in Department of Conservation, etc. v. Tate, 231 F.2d 615, that citizens of the State have right to use parks thereof without discrimination on ground of race; that these rights cannot be abridged by leasing parks with ownership being retained by the State.*

Judge Moore in Lawrence v. Hancock, D.C., 76 F.Supp. 1004, 1009, in a similar situation said:

"It is not conceivable that a city can provide the ways and means for a private individual or corporation to discriminate against its own citizens. Having set up the swimming pool by the authority of the legislature, the city, if the pool is operated, must operate it itself, or, if leased, must see that it is operated without any such discrimination."

The brief filed by the City of Greensboro contains this significant statement in its statement of facts:

"In December, 1955, six of ten plaintiffs in this action were denied the use of Gillespie Park Golf Course by employees of Gillespie Park Golf Club, Inc. That same month the City Council instructed the city Manager to proceed forthwith to receive bids for the sale of Gillespie

---

* Derrington v. Plummer, 5 Cir., 240 F.2d 922.

Park Course and upon such sale to close the Nocho Park course. The land upon which the latter is situated is to be used for governmental purposes and is not to be sold."

The facts show that the city is still "in the saddle" so far as real control of the park is concerned and that the so called lease can be disregarded if and when the city decides to do it. It also lends powerful weight to the inference that the lease was resorted to in the first instance to evade the city's duty not to discriminate against any of its citizens in the enjoyment in the use of the park. The threatened sale is the procedure pursued in Clark v. Flory, D.C., 141 F.Supp. 248, affirmed in D.C., 237 F.2d 597.

The City of Greensboro contends that Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776; Hayes v. Crutcher, D.C., 137 F.Supp. 853; Augustus v. Pensacola, D.C.N.D.Fla., and Holley v. Portsmouth, D.C.E.D.Va., 150 F.Supp. 6, are inapplicable because they dealt with anticipated leases while in the instant case the lease existed before this suit was brought. It further contends that the lease is valid under the North Carolina law and therefore the valid existing lease "freezes" the status quo and leaves the court without power to do anything. If this logic is sound constitutional rights are a delusion and a snare. Such hitherto sacred rights can not be abridged by a mere lease between the city and a third party and the courts are not made impotent to afford relief. To hold otherwise would open a Pandora's box by which governmental agencies could deprive citizens of their constitutional rights by the artifice of a lease. If the lessee desires to continue to operate the golf course, it must do so without discrimination against the citizens of Greensboro. This public right can not be abridged by the lessee so long as the course is available to some of the citizens as a public park; it can not be lawfully denied to others solely on account of race.

The private corporation challenges the right of plaintiffs here because it contends they have not exhausted their administrative remedies, relying on Carson v. Warlick, 4 Cir., 238 F.2d 724, and other cases dealing with enrollment in educational institutions. These cases are not in point. This golf club permits white people to play without being members, or otherwise, except it requires the prepayment of green fees. The plaintiffs here paid their fees, were forced off the course by being arrested for trespass. Everybody knows this was done because the plaintiffs were Negroes and for no other reason. This court can not ignore it. Moreover, there existed no known and uniform procedure of an administrative nature to be exhausted by plaintiffs. Admittance to a park or golf course is unlike enrolling in an educational institution.

A decree will be entered declaring that these plaintiffs have been denied on account of their color equal privileges to use the golf course owned by the City Board of Education and the City of Greensboro and operated by the Gillespie Park Golf Club, and permanently restraining the defendants from discriminating against plaintiffs and other members of their race on account of color, so long as the golf course is owned by these agencies and operated for the pleasure and health of the public, their agents, lessees, servants and employees.

The court invited counsel for the respective parties to confer and to suggest to the court the best practical way to make effective the decree, in the event the plaintiffs prevailed. The final decree will be deferred a short time to get the result of this conference.

■ Citizenship in the United States imposes uniform burdens, such as paying taxes and bearing arms for the preservation and operation of our government. In like manner whatever advantages or privileges one citizen in the United States may enjoy through his liberty becomes the constitutional right of each citizen and without regard to race, color or creed. These principles of law have been fully and elaborately established in the Fourth Circuit Court of Ap-

peals and by the Supreme Court of the United States and must be adhered to in this case.