Deloris TONKINS, Ruby P. Taylor, John Sneed, Mable Jackson, James Webster, Adam Stewart, Hershey Crenshaw and Julia Holly, on behalf of themselves and others similarly situated, Plaintiffs,

v.

The CITY OF GREENSBORO, NORTH CAROLINA, a municipal corporation, and James R. Townsend, City Manager of the City of Greensboro, North Carolina, Defendants.

Civ. No. C–61–G–58.

United States District Court
M. D. North Carolina,
Greensboro Division.
May 23, 1958.

Constance Baker Motley and Thurgood Marshall of New York City, C. O. Pearson of Durham, N. C.; J. Kenneth Lee and Major S. High of Greensboro, N. C., for plaintiffs.

H. J. Elam III, John F. Yeattes, Jr. and J. L. Warren of Greensboro, N. C., for defendants.

STANLEY, District Judge.

This is an action for a declaratory judgment and injunction brought by several Negro citizens and residents of the City of Greensboro, North Carolina,

on behalf of themselves and others similarly situated, against the City of Greensboro and its City Manager, in which the Court is asked to issue a preliminary injunction, pending the final determination of the cause, and a permanent injunction upon its final determination, (1) enjoining defendants from refusing to permit plaintiffs, and members of the class which they represent, to use the Lindley Park Swimming Pool in the City of Greensboro, North Carolina, solely because of the race and color of the plaintiffs and members of their class, and (2) enjoining defendants from selling the Lindley Park Swimming Pool for the sole purpose of avoiding their duty to operate same on the same terms and conditions for both Negroes and white citizens and for the sole purpose of denying the constitutional right of plaintiffs, and others similarly situated, to use said pool under the same terms and conditions applicable to white persons. The jurisdiction of the Court is invoked under Title 28 U.S.C. Section 1343(3).

With their original complaint, which was filed on March 31, 1958, plaintiffs filed a motion for preliminary injunction alleging that defendants were seeking to dispose of the Lindley Park Swimming Pool by sale on April 1, 1958. The motion came on for hearing on April 8, 1958. On that date plaintiffs filed an amended complaint and defendants filed a motion to dismiss on the ground that complaint failed to state a claim upon which relief could be granted. It was agreed, in open court, that the motion to dismiss might be heard at the same time as plaintiffs' motion for a preliminary injunction, and that the defendants' motion would be directed to the complaint as amended. In support of their motion to dismiss, the defendants introduced all the resolutions and minutes of the City Council of the City of Greensboro regarding this controversy and it was stipulated that these documents might be considered by the Court in support of plaintiffs' motion for a preliminary injunction.

The basic facts are not in dispute.

In about 1937, the City of Greensboro constructed the Nocho Park Swimming Pool which has, since the date of its construction, been operated exclusively for the use of the Negro citizens of the city. During the winter of 1954–1955, the City of Greensboro constructed the Lindley Park Swimming Pool, which was first opened to the public in May, 1955. This pool, which is the subject of the present controversy, has been operated for the exclusive use of white citizens of the City of Greensboro.

The cost of constructing the Nocho Park Swimming Pool is not available, but the cost of constructing and equipping the Lindley Park Swimming Pool was $214,958.31, which does not include any valuation on the land. During the past three seasons the City has realized revenue from the operation of the Nocho Park Swimming Pool of $5,254.90, and revenue from the operation of Lindley Park Swimming Pool of $48,220.04. During the same period the City expended $12,635.70 in the operation of the Nocho Park Swimming Pool and $33,412.56 in the operation of the Lindley Park Swimming Pool. The expenditures do not include such items as depreciation, return on investment, administrative costs, tax losses, and the like.

At a meeting, on July 15, 1957, of the City Council of the City of Greensboro, Mayor George H. Roach noted that a petition, dated June 27, 1957, and signed by some 26 Negro citizens of the city, had been filed requesting that the Greensboro Public Library and Lindley Park Swimming Pool be opened to Negroes. The Mayor then read to the Council the following resolution which had been adopted by the Board of Managers of the Greensboro Public Library at its meeting held on July 3, 1957:

"The Board of Managers of the Greensboro Public Library states that the facilities of the library are available to any citizens of Guilford County who can present satisfactory identification."

The following resolution with respect to the operation of city-owned swimming pools was then adopted:

"Resolution Declaring a Policy As To Public Swimming Pools

"Whereas, a petition has been presented to the City Council requesting that members of the Negro race be allowed to use the Lindley Park swimming pool, which is now used by members of the white race only; and

"Whereas, in the opinion of the City Council, joint use of the pool at this time might disrupt relations between the races which have been harmonious until now; and

"Whereas, the City Council is charged with the duty of preserving the public peace in Greensboro, without which there are no civil rights for any of its citizens;

"Now, Therefore, be it Resolved by the City Council of the City of Greensboro:

"That it be declared to be the policy of the City Council to maintain and operate the public swimming pools of the City for the remainder of the 1957 season in the same manner as they are presently being used; provided, however, that the City Council will, before the 1958 season, give earnest consideration to the problems raised in the petition mentioned above."

Pursuant to the foregoing resolution, the Lindley Park Swimming Pool was operated on a racially segregated basis for the remainder of the 1957 season, and on October 7, 1957, the Council adopted the following resolution:

"Whereas, a petition has been presented to the City Council requesting that members of the Negro race be allowed to use the Lindley Park swimming pool, heretofore used by members of the white race only; and

"Whereas, the City Council resolved to maintain and operate the swim-ming pools of the City for the remainder of the 1957 season in the same manner as theretofore; provided however, that it would give earnest consideration to the problems raised in the said petition before the 1958 season; and

"Whereas, upon the most earnest consideration, it now appears that the joint use of the swimming pools owned by the City at any time in the foreseeable future would inevitably and gravely disrupt the existing harmonious relations between the races, and the present investments in such facilities might more beneficially be liquidated and reinvested in a type of recreational facility offering service and enjoyment to a greater portion of the population of the City than that now benefiting from the operation of the swimming pools;

"Now, Therefore, be it Resolved by the City Council of the City of Greensboro:

"That a public hearing be held on October 21, 1957, at 4:00 P.M. in the Council Chamber, City Hall, for the purposes of obtaining the views of the residents of the City of Greensboro as to:

"1. Their concurrence in the discontinuance of the operation of swimming pools as a function of the City Government and their disposal as property of the City.

"2. The type of recreational facility or activity most widely desired, if any, in substitution thereof."

On October 21, 1957, in accordance with the foregoing resolution, a public meeting was held at which a number of citizens expressed their views regarding the Council's proposal to discontinue the operation of swimming pools as a function of the city government and their disposal as public property, and the type of recreational facilities or activities most widely desired in substitution of the swimming pools. Most of the persons who appeared and spoke at the public hearing favored the sale of the swimming pools.

Thereafter, on November 18, 1957, the City Council adopted the following resolution:

"Whereas, a public hearing was called and held by the City Council on October 21, 1957, for the purpose of obtaining the views of the people of the City of Greensboro concerning the operation of the public swimming pools and the substitution of other facilities if discontinued, and the City Council has earnestly considered the views expressed at that hearing, which was attended by a large number of citizens, the problems involved in the continued use and operation of the pools, the capital investments therein, and the public use and benefits therefrom; and

"Whereas, the City Council is of the opinion that it is in the best public interest that public swimming pools be no longer operated by the City of Greensboro, and therefore the Lindley Park and Nocho Park swimming pools are no longer required for the needs, purposes and uses of the City, and their disposition should be undertaken by the City Council; and

"Whereas, the City Council is of the opinion that in order to provide the greatest benefit for the most people that any funds received from the sale of said properties should be used for other recreational uses and purposes;

"Now, Therefore, be it Resolved by the City Council of the City of Greensboro:

"1. That the City of Greensboro no longer operate public swimming pools.

"2. That the disposition of the Lindley Park and Nocho Park swimming pools be undertaken by the City of Greensboro.

"3. That the City Manager is directed to submit to the City Council proposed advertisement for the sale of said properties and he is fur-ther directed to recommend to the Council the amount of land which should be included in each sale in order to carry out the purposes of this resolution."

On January 22, 1958, the City Council adopted a resolution declaring that the City of Greensboro had no governmental or other need for the Nocho Park Swimming Pool and the Lindley Park Swimming Pool and that, in the opinion of the City Council, the best interest of the City would be served by the sale of these facilities. The resolution then provided for the sale of both pools to the last and highest bidder at public auction on the 18th day of March, 1958. All legal formalities with respect to advertising the sale were observed and the City Council reserved the right to reject any or all bids received. By resolution adopted on February 3, 1958, the date of sale was postponed from March 18, 1958, to April 1, 1958.

At the public sale on April 1, 1958, a high bid of $75,000 was received for the Lindley Park Swimming Pool, and a high bid of $9,550 was received for the Nocho Park Swimming Pool. The City Council met on April 8, 1958, and adopted a resolution rejecting both bids as inadequate.

At a meeting of the City Council held on April 30, 1958, a formal resolution was adopted providing for the public sale of both swimming pools, subject to confirmation by the City Council, on June 3, 1958, and directing that the sale be advertised in accordance with the provisions of the Charter of the City of Greensboro and the General Statutes and Private Laws of North Carolina.

Based on the foregoing facts, none of which are in serious dispute, the following questions are presented to the Court for determination: (1) Whether defendants may continue to refuse to permit plaintiffs, and other Negroes similarly situated, to use Lindley Park Swimming Pool solely because of their race and color; (2) whether defendants may sell Lindley Park Swimming Pool for the

sole purpose of avoiding the duty imposed upon them to permit use of the pool by both Negro and white residents of Greensboro under like terms and conditions, and for the sole purpose of defeating the constitutional rights of plaintiffs, and others similarly situated, to use the swimming pool under the same terms and conditions applicable to white citizens; and (3) whether the complaint should be dismissed for failure to state claim upon which relief can be granted. These questions will be discussed in the order listed.

I

*Whether defendants may continue to refuse to permit plaintiffs, and other Negroes similarly situated, to use Lindley Park Swimming Pool solely because of their race and color.*

█ With respect to the right of the plaintiffs, and other Negroes similarly situated, to use the Lindley Park Swimming Pool on the same terms and conditions applicable to· white citizens, this would appear to be a moot question. The City of Greensboro, through its City Council, is firmly committed to a permanent closing and sale of the pool. In the resolution adopted on November 18, 1957, the City Council resolved "that the City of Greensboro no longer operate public swimming pools, and that the disposition of the pools owned by the city be undertaken." Mayor Roach has filed an affidavit with the Court stating "that the Lindley Park Swimming Pool is now closed by an order of the City Council and is not and will not be available for use by any person." Counsel for the plaintiffs stated in their brief that it is the present intention of the defendants to sell the pools or leave them closed, and that the only question which the plaintiffs' actions squarely presents is whether, after having received a petition from certain Negro citizens asking that they be permitted to use the Lindley Park Swimming Pool, the defendants had the right to elect to sell or close the pools rather than to carry out their duty and permit joint use. Further, the defend-

ants concede in their brief that if a municipality chooses to operate public swimming facilities it must operate such facilities without any racial discrimination, and that the City recognizes that if it reopens its public swimming facilities it cannot discriminate against any of its citizens on the grounds of race. These concessions are in accord with the uniform holding of the courts in recent years. Clark v. Flory, 4 Cir., 1956, 237 F.2d 597.

█ In light of the declared policy of the City of Greensboro to no longer operate public swimming pools, and to undertake the sale of the swimming facilities which it presently owns, and the concessions made by the plaintiffs and the defendants in their briefs, there is no occasion for the entry of a declaratory judgment with reference to the rights of the plaintiffs, and other Negroes similarly situated, to use the Lindley Park Swimming Pool. The pool has been closed and there is no basis for the issuance of an injunction in regard to its use. ˙A declaratory judgment is never granted unless there is an actual and substantial controversy before the court. In this case, there is no present necessity for a judgment declaring the constitutional rights of the plaintiffs to use the Lindley Park Swimming Pool, for there is no controversy. Federal Courts have no power to render advisory opinions or to decide in advance constitutional issues not based on present necessity therefor or issues not presented in actual cases. The Court can only enjoin future actions, not past actions. An almost identical situation was presented in Clark v. Flory, D.C.E.D.S.C.1956, 141 F.Supp. 248, affirmed 4 Cir., 1956, 237 F.2d 597. While the action was pending in the district court, the State Legislature passed a statute providing that the State Park in controversy be closed until further action be taken by the Legislature with regard thereto. The district court found no occasion for the entry of declaratory judgment and dismissed the complaint since the issues had become moot by the closing of the park.

In reaching this conclusion, which I conceive to be in accord with firmly established principles of law, I am assuming that if the City of Greensboro should at sometime in the future undertake the operation of public swimming pools, it will do so on a non-discriminatory basis, as it has conceded it must do.

## II

*Whether defendants may sell Lindley Park Swimming Pool for the sole purpose of avoiding the duty imposed upon them to permit use of the pool by both Negro and white residents of Greensboro under like terms and conditions, and for the sole purpose of defeating the constitutional rights of plaintiffs, and others similarly situated, to use the swimming pool under the same terms and conditions applicable to white citizens.*

This question seems to present the real controversy involved in this case. If the plaintiffs are not entitled to an injunction to prevent a bona fide sale of the Lindley Park Swimming Pool, it necessarily follows that they have failed to state a claim upon which relief can be granted.

The plaintiffs allege and contend that the facts, when viewed realistically, conclusively show that the City of Greensboro resolved to close its swimming pools and undertake their sale for the sole purpose of avoiding their duty to operate the pools on a racially integrated basis, and for the sole purpose of defeating the rights of plaintiffs to use the Lindley Park Swimming Pool under the same terms and conditions applicable to white persons. The defendants on the other hand contend that the facts simply show that the City Council, recognizing that if it continued to operate public swimming facilities it must operate them on a racially integrated basis, and being of the opinion that racial integration of such facilities would disrupt the existing harmonious relationship existing between the two races, and would seriously impair the usefulness and economic value of these properties, and might lead to public disorder, decided that it was in the best public interest to close and sell these facilities at public auction and use the proceeds for other recreational uses and purposes which would be of more benefit to a greater number of its citizens.

I am inclined to accept the resolutions adopted by the City Council at their face value. However, I do not believe that the inferences and conclusions which might be drawn from the resolutions of the City Council in deciding to close and sell its swimming pools are determinative of the legal principles involved. For this reason, the Court feels it unnecessary to belabor the point.

It is well established that the equal protection clause of the Fourteenth Amendment to the Constitution of the United States imposes upon public officials the duty to operate publicly owned facilities without restrictions based upon the race and color of the users. Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Id., 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Muir v. Louisville Park Theatrical Association, 6 Cir., 1953, 202 F.2d 275, vacated 1954, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112; Dawson v. Mayor and City Council of Baltimore City, 4 Cir., 1955, 220 F.2d 386, affirmed 1955, 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774; Holmes v. City of Atlanta, 5 Cir., 1955, 223 F.2d 93, reversed 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776; Browder v. Gayle, D.C.M.D.Ala.1956, 142 F.Supp. 707, affirmed 1956, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114; Simkins v. City of Greensboro, D.C.M.D.N.C.1957, 149 F. Supp. 562, affirmed 4 Cir., 1957, 246 F.2d 425. The legal principles enunciated in these cases are not challenged, but they do not support the plaintiffs' theory in this case because they all deal with facilities that were being operated. The question here presented is whether the defendants have the right to close or sell the Lindley Park Swimming Pool rather than to operate it on an integrated basis. The plaintiffs contend that the answer to this question depends upon whether there

is a duty imposed upon the defendants to support the Fourteenth Amendment to the Constitution of the United States. There is no question but that the defendants do have a positive duty to support the Fourteenth Amendment and other provisions of the Constitution of the United States, as these provisions are interpreted by our courts, but the question still remains as to whether or not the Constitution of the United States imposes upon a municipality the positive duty to own and operate recreational facilities.

The plaintiffs concede that this is the first case in which the right of a state or municipality to close or sell public facilities has been challenged as violative of the Constitution of the United States. Under these circumstances, they are unable to cite any authority in direct support of their position. They seek to establish as a legal theory the proposition that there is a denial of equal rights where the purpose of the closing or sale is to avoid the necessity of operating the facilities on a racially integrated basis.

■ The Court is not aware of any law in North Carolina which requires a municipality to construct or operate swimming pools or other recreational facilities. Section 160–156, General Statutes of North Carolina, declares that the creation, establishment and operation of a recreation system is a governmental function and a necessary expense as defined by Article VII, section seven, of the Constitution of North Carolina. This declaration only qualifies recreational facilities as a necessary expense in order that funds derived from ad valorem taxes may be expended on such facilities without the necessity of a vote of the people. It does not impose any obligation on governmental units to establish recreational facilities but is simply an enabling law.

Section 160–59, General Statutes of North Carolina, contains the following provisions relative to the sale of municipal property:

"The mayor and commissioners of any town shall have power at all times to sell at public outcry, after thirty days' notice, to the highest bidder, any property, real or personal, belonging to any such town, and apply the proceeds as they may think best."

Further, the City of Greensboro has specific legislative authority for selling the property in question. Section 79(g) of the City Charter, which is Chapter 37 of the Private Laws of North Carolina, 1923 Session, as amended by Chapter 960, 1957 Session Laws of North Carolina, provides as follows:

"79(g). Sale of real property conveyed to City of Greensboro for parks, recreation and playgrounds. The city council may sell, as provided in Section 79(c) any part of any real property heretofore or hereafter conveyed to the city for parks, or recreation or playgrounds; provided, that nothing herein shall have the effect of altering the terms or conditions of any agreement with the city or conveyance to the city relative to the use of property."

No contention is made that the City of Greensboro does not have ample authority under the laws of the State of North Carolina to sell the facility in question, or that all the laws relating to the sale of municipal property have not been complied with. Neither is there any allegation or contention that there has been any understanding or agreement between the City and any prospective purchaser whereby the City expects to retain any control whatever over the future operation of either of the swimming pools.

In the final analysis, the plaintiffs can only complain of discrimination or unequal treatment. If the swimming pools are closed to all, or disposed of through a bona fide public sale, there can be no unequal treatment and, therefore, no racial discrimination. No citizen of Greensboro will have access to municipal swimming facilities.

■■ Unless persons under the same circumstances and conditions are treated differently there can be no discrimination. No person has any constitutional right to swim in a public pool. All citizens do have the right, however, if a public swimming pool is provided, not to be barred therefrom solely because of race or color. If the swimming pools are closed or sold, the rights of all groups will be equal, and it must follow that the closing or sale will not discriminate against anyone.

■ The assumption that the Lindley Park Swimming Pool will be purchased by white persons and operated for white persons only is not supported by any evidence. At a public sale, persons of all races, including residents and non-residents, are permitted to bid.

The position of the defendants seem to be sustained by two recent Fourth Circuit decisions. In Clark v. Flory, D.C. E.D.S.C.1956, 141 F.Supp. 248, 250 affirmed, 4 Cir., 1956, 237 F.2d 597, where action was brought to restrain enforcement of segregation statutes in use of state park, the Court stated:

"No one contends that this Court has the power to require the State of South Carolina to operate any park. This Court cannot by mandamus order the reopening of the closed park."

In Simkins v. City of Greensboro, D.C. M.D.N.C.1957, 149 F.Supp. 562, it was held that a municipality was not required to furnish a golf course for its citizens but if it undertakes to do so out of public treasury, it cannot constitutionally furnish such facilities to a part of its citizens and deny them to others similarly situated. The decree provided that the city could only dispose of the golf course property by a bona fide sale. In affirming the order of the district court, the Court of Appeals for the Fourth Circuit, in City of Greensboro v. Simkins, 4 Cir., 1957, 246 F.2d 425, 426, used the following language:

"Complaint is made of the provision of the order forbidding disposition of the golf course except by bona fide sale. It is clear, however, that this provision was inserted merely to prevent evasion of the court's order forbidding racial discrimination in the operation of the property; for it was followed by a reservation retaining jurisdiction and the power to modify the provision upon application of any of the parties. As pointed out in the Tate case, supra, the right of citizens to use public property without discrimination on the ground of race may not be abridged by the mere leasing of the property. The city may, however, under the terms of the order, part with the ownership of the property by bona fide sale; and the court, under the power reserved, will doubtless approve other dispositions if they will not result in unlawful discrimination against citizens on the ground of race or color. Any error in the exercise of the power thus reserved will, of course, be subject to review by this court."

Assuming that the Lindley Park Swimming Pool will be sold at public auction to the highest bidder, and that there will be no collusion between the City of Greensboro and the successful bidder relating to the future operation or use of the swimming pool, except uniform restrictions imposed under zoning and other similar laws which do not restrict the class of persons entitled to use the facility, the Court is of the opinion and concludes that the plaintiffs are not entitled to either a preliminary or permanent injunction enjoining the sale of the Lindley Park Swimming Pool.

### III

*Whether the complaint should be dismissed for failure to state claim upon which relief can be granted.*

In view of the conclusions reached with respect to the rights of the plaintiff to

an injunction enjoining the sale of the Lindley Park Swimming Pool, it necessarily follows that the plaintiffs have failed to state a claim upon which relief can be granted, and that the suit should be dismissed.

The Court will, however, defer the entry of a decree dismissing the suit for a period of 30 days after the sale of the Lindley Park Swimming Pool has been confirmed. If within that period the plaintiffs feel they can show that the sale was not bona fide in the sense that there was collusion between the defendants and the successful bidder regarding the future use of the pool, the Court will, upon written motion of the plaintiffs, advance the case on the docket and hear the evidence and determine the rights of the parties in accordance with the facts presented.