[No. 2239.]

## W. D. Hill *v.* The State.

1. PERJURY—EVIDENCE—CASE STATED.—The record discloses that in 1882 a trial of the right of property to a certain calf was had between one Hunt and the defendant, the former as plaintiff, which resulted in a judgment for defendant. Thereafter, in April, 1885, Hunt was tried upon an indictment charging him with illegally marking and branding the said calf, which trial resulted in the acquittal of Hunt. On that trial the defendant testified that he owned the said calf; that he never sold the said calf to Hunt at any time or for any consideration, and that he never told any person or persons that he had sold the said calf to Hunt, and that said Hunt marked and branded said calf without his consent. The said state-

ments, alleged to be false, comprise the assignment of perjury in this case. Upon the trial the appellant offered in evidence the record of the trial and judgment in the case of Hunt v. Hill, involving the title to the calf, which, upon objection by the State, was excluded. *Held*, correct, because the parties to the said civil suit are not the parties to this prosecution; because the civil action between Hunt and defendant was not a case *in rem*, nor the judgment in that case of a public nature, and because the civil judgment was not sought to be used by way of inducement or to establish a collateral fact.

2. Same.—See the statement of the case for evidence *held* pertinent and admissible on a trial for perjury.

3. Same—Practice—Charge of the Court.—An erroneous charge of the court, unless exception was reserved at the proper time, will not be revised by this court when it does not appear that the error was calculated to injure the rights of the accused. In view of the nature of this case and of the evidence adduced the omission of the trial court to define the term "willful" can not be held to be material error.

4. Same.—See the opinion *in extenso* for objections to the charge of the court, *held* to be untenable.

5. Same—Fact Case.—See the statement of the case for evidence *held* sufficient to support a conviction for perjury.

APPEAL from the District Court of Bell. Tried below before the Hon. W. A. Blackburn.

The conviction was for perjury, the false statements assigned as perjury appearing, in substance, in the statement of the case; and the penalty assessed against the appellant being a term of five years in the penitentiary.

R. H. Turner, district clerk of Bell county, Texas, was the first witness for the State. He identified the books in evidence as the records of the district court of Bell county, Texas. Those records showed the proceedings had upon the trial of the cause of The State of Texas v. W. A. Hunt, Jr., under indictment No. 2303, charging the said Hunt with illegally marking and branding the certain calf of W. D. Hill. It was the recollection of the witness that W. D. Hill, the defendant in this case, was sworn as a witness in that case, and that witness administered the oath to him.

John M. Furman testified, for the State, that he was the county attorney of Bell county, Texas, on the thirtieth day of April, 1884, when W. A. Hunt, Jr., was tried upon indictment No. 2303 for illegally marking and branding the calf of W. D. Hill. The said W. D. Hill was one of the witnesses who testified for the State in that case. He stood with the several witnesses to whom

the oath was administered in a body by district clerk Turner. He was the first witness placed upon the stand by witness, who represented the State. W. D. Hill then testified that the calf marked and branded by Hunt was his property; that he had never sold or traded that calf to Hunt for five bushels of corn, or for any thing else, and that the said calf was marked and branded without his consent. This witness was corroborated by two of the jurors in the Hunt trial and by the attorney who defended Hunt.

W. A. Hunt, Jr., testified, for the State, that he was the identical W. A. Hunt who was named in indictment No. 2303, and who was tried under that indictment in the district court of Bell county for marking and branding the calf of W. D. Hill. Hill testified on that trial that he was the owner of the said calf; that he did not consent for the witness to mark and brand the said calf; and that he never sold or traded the said calf to witness. In fact and in truth, the said Hill sold the said calf to witness for five bushels of corn, which corn was paid to the said Hill by the witness, the said corn being then worth from seventy-five cents to one dollar per bushel, and said Hill did consent for the said witness to mark and brand the said calf, and agreed to help the witness so to mark and brand it. On the evening before witness marked and branded the said calf, he and Messer met Hill, and Hill told witness that the said calf, known as the Furman calf, was then at his house, and that if he, witness, would come to his house the next day he, Hill, would help him mark and brand it. Witness and Messer went to Hill's on the next morning, Sunday, and Hill said that the calf was not up. Messer went off. Hill told witness that he did not then have time to help witness hunt the calf, but told witness to take the calf wherever he could find it, and mark and brand it. J. L. Hilliard was then at Hill's house.

On cross examination, the witness admitted that he marked and branded the said calf on Sunday, while Hill was away from home. He was at Hill's house on that morning, and Hill told him that the calf was not up, and that he did not then have time to help hunt it. Witness and Hill left at the same time, Hill going to church. Witness went back to Hill's house after a time and found the calf in Hill's pen. He tried to drive the calf out of the pen through the gate, but failed. He then roped the calf, let a panel of fence down, and drove it out, and dragged it to a thicket in a ravine, three hundred yards distant, and

marked and branded it, and left it tied to a tree. The animal got loose. Witness did not mark and brand the calf in Hill's pen, because he had no wood there with which to make a fire and heat the branding irons. He found the nearest wood at the thicket. Witness was not now friendly with Hill, and had not spoken to him for three years. Witness denied that, upon his acquittal of the offense charged against him in indictment No. 2303, he told J. R. Smith, in the court house, that he did steal Hill's calf, but that, having escaped conviction, he intended to keep out of trouble in the future. Witness never had a conversation with Smith about the calf. The witness was then asked if he did not sue Hill for the said calf in Justice Estell's court, and if judgment for the same was not rendered in Hill's favor. The State objected to the question, and the objection was sustained. Witness further testified that, a few days prior to the first day of April, 1882, he traded with Hill for a red yearling, agreeing to pay Hill eight bushels of corn for the said yearling. Hill came to witness's father's house for the corn while witness was shelling it, and it was during that visit that witness traded with him for the calf. Witness paid Hill the corn for the yearling and the calf at that time. Hill marked and branded the yearling for the witness, with the witness's mark and brand. Messer was present when the trades were made.

John Messer testified, for the State, in substance, that he was present and witnessed the trade between Hill, defendant and W. A. Hunt, jr. Hill traded Hunt a yearling for eight bushels of corn, and also the red Furman calf for five bushels of corn. Hill got fourteen bushels of corn, one bushel being thrown in by Hunt as good measure, and Hill took the corn home. Hill admitted the trade for the Furman calf on the day before Hunt marked it, and told Hunt the calf was at his house, and that he could come next day and mark and brand it.

J. L. Hilliard testified, for the State, that he was at defendant's house one day in April, 1882, when defendant came home with some corn in his wagon, which he said he got from W. A. Hunt, Jr., in a trade for a yearling or calf. The witness was again at Hill's house on the Sunday that Hunt marked the calf. He heard Hill say to Hunt, before he went off to church: "We will attend to that some other time, but you can take it wherever you find it." The witness did not hear what preceded that remark. John Doyle testified substantially as did Hilliard.

Several witnesses for the State testified that, prior to Hunt's trial for marking and branding Hill's calf, they heard Hill say that he had sold his yearlings to Hunt for corn. Two, at least, of these witnesses testified that Hill mentioned the Furman calf as one of the animals he sold to Hunt. The State closed.

John M. Furman testified, for the defense, that he was W. D. Hill's attorney in the civil suit of Hunt v. Hill, involving the right of property to the Furman calf. Witness had a cow and her calf of Hill in April, 1882, milking the cow. The calf became known as the Furman calf. In the summer of 1882, Hunt came to witness and told him that he had bought the calf from Hill, and directed witness, when he was through with the calf, to deliver it to him and not to Hill. The witness refused, and, not caring to become involved in a possible controversy over the calf, between Hunt and Hill, he drove the cow and calf to Hill's house. While at Hill's house, witness observed Hill's cow pen, and knew that wood in abundance was accessible to it. On the trial of the civil suit of Hunt v. Hill, Hunt testified about as he did on this trial about the branding of the calf, except that he said Hill was not at home when he went after the calf, and that that part of the fence he let down to get the calf out of the pen could not be seen from Hill's house. Mr. McDowell corroborated this witness as to Hunt's testimony upon the trial of the case of Hunt v. Hill.

Several witnesses for the defense supported the defendant's reputation for truth and veracity, and J. R. Smith testified in his behalf that, just after Hunt's release from jail after his trial for marking and branding Hill's calf, the latter said: "If I did steal Hill's calf, I am clear of it now, and I will keep out of such trouble in the future."

The motion for new trial raised the questions discussed in the opinion.

*Harris & Saunders* and *W. A. McDowell*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. This is an appeal from a conviction for perjury. W. H. Hunt, jr., was indicted and tried for illegally marking and branding a certain calf alleged to be the property of the appellant. Upon this trial appellant was a witness, and his testimony then given is assigned as perjury. Hunt was tried

on April 20, 1884, and it appears from a bill of exceptions that Hunt sued Hill for the calf before a justice of the peace, in which suit Hill recovered a judgment for costs. This suit was instituted October 22, 1882. The indictment was presented against Hunt October 11, 1883.

Appellant offered in evidence the record of trial and judgment in the case of Hunt v. Hill, relating to the title to the calf. The State objected upon the ground of irrelevancy, and the court sustained the objection, and appellant excepted. In this there was no error. The parties to the first suit were not the same as in this prosecution. (3 Greenl., sec. 522.) The suit between Hunt and Hill was not a case *in rem*, nor was the judgment in that case of a public nature. (Id., sec. 526.) Nor was this judgment sought to be used by way of inducement, or to establish a collateral fact, as is permitted in such instances as are treated in section 527 of Greenleaf on Evidence.

The State, over the appellant's objections, introduced in evidence conversations between appellant and J. R. Graves, H. C. Pedigo, C. N. Porter and one Hilliard, occurring at different times, in regard to trades of yearlings and other stock with W. H. Hunt, jr. Appellant objected because these conversations were had anterior to October, 1882, and because the matters established by these conversations were immaterial and irrelevant. By referring to the testimony of these witnesses it is found that the evidence elicited from them is quite pertinent, and very conclusive in its character; hence there was no error in its admission upon the grounds of irrelevancy. Nor can we see how the fact that these conversations occurred prior to October, 1882, could affect the question of competency.

The charge of the court is complained of because it does not define the word "willful." No objection was taken to the charge when given, nor were any special instructions requested, the correctness of the charge being called in question for the first time in the motion for a new trial. We are cited to several cases holding that it is necessary to define "willful." These decisions are correct when considered with reference to the offenses discussed, and the peculiar facts of the cases cited. When, however, considered with reference to this offense, and when the charge is taken as a whole, we do not think the omission contributed in the least to injure the appellant.

Perjury is a false statement *deliberately* and *willfully* made. A false statement made through inadvertence, or under agita-

tion, or by mistake, is not perjury. The court in its charge gave to the jury the above definition and restrictions in a very clear manner. We can not see how a party can deliberately, without agitation, coolly, without mistake or inadvertence, make a statement without such statement be "willfully" made. The omission, if error, not being objected to at the time, we must look to the entire record to ascertain if it was prejudicial to defendant, and, thus viewing the record, we perceive no injury.

It is urged that "the court erred in each and all of its charges to the jury except the fourth, seventh and eighth, because they are not law, and, if law, they are not warranted by the facts in evidence, in this, first, the charge of the court alleges that defendant is charged with perjury in the indictment, when in truth and in fact said indictment will not sustain a conviction for the offense of perjury."

If the indictment be defective why not move to quash or in arrest of judgment? Why question the charge because it simply states that "defendant is charged with perjury in the indictment?"

"Second. In the second charge the allegation of the indictment was not correctly stated." The false statements made by the allegations of the indictment are very clearly stated and each of the false statements assigned for perjury is very distinctly presented to the jury with such instructions as to properly form an issue upon each statement.

In the fifth charge the court instructed the jury that they must find from the evidence, beyond a reasonable doubt, that the statements were false. Appellant does not object to this, but does object because the jury were not instructed that they must believe that defendant knew their falsity beyond a *reasonable doubt*. By referring to the charge it will be seen that the reasonable doubt is applied as well to the knowledge of defendant as to the truth of the statements. We have critically examined the charge with and without reference to the objections urged to it, but fail to find such error as demands a reversal of the judgment for error therein.

Counsel urge the insufficiency of the evidence to support the verdict. We have read the statement of facts several times, and must say we believe the verdict fully sustained by the evidence. The judgment is affirmed.

*Affirmed.*