## WOLFE ET AL. *v.* NORTH CAROLINA.

No. 7.   Argued October 19–20, 1959.—Decided June 27, 1960.

*J. Alston Atkins* argued the cause for appellants. With him on the brief were *Harold L. Kennedy, C. O. Pearson, Carter W. Wesley* and *James M. Nabrit, Jr.*

*Ralph Moody,* Assistant Attorney General of North Carolina, argued the cause for appellee. With him on the brief were *Malcolm B. Seawell,* Attorney General of North Carolina, and *Horace R. Kornegay.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The appellants were convicted of violating a North Carolina criminal trespass statute,[1] and their convictions were upheld by the Supreme Court of North Carolina, 248 N. C. 485, 103 S. E. 2d 846. This appeal, grounded

---

[1] "If any person after being forbidden to do so, shall go or enter upon the lands of another, without a license therefor, he shall be guilty of a misdemeanor, and on conviction, shall be fined not exceeding fifty dollars, or imprisoned not more than thirty days: . . . ." N. C. Gen. Stat. § 14–134. This statute was first enacted in 1866. North Carolina Laws, Special Session, Jan., 1866, c. 60.

on 28 U. S. C. § 1257 (2),[2] attacks the constitutional validity of the statute as applied in this case. Because of doubt as to whether any substantial federal question was presented to or decided by the state courts, we postponed further consideration of the question of jurisdiction until the hearing of the case on the merits. 358 U. S. 925, 359 U. S. 951. For reasons to be stated, we have concluded that the appeal must be dismissed.[3]

There is no dispute as to the basic circumstances which led to the prosecution and ultimate conviction of the appellants. In December, 1955, Gillespie Park Golf Club, Inc., operated an 18-hole golf course on land which it leased from the City of Greensboro, North Carolina, and the Board of Trustees of the Greensboro City Administrative Unit. The bylaws of the lessee limited the use of the golf course to its "members" and persons in certain other specifically restricted categories.[4] On December 7, 1955,

---

[2] "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows: . . .

"(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity."

[3] The appellants ask that the appeal be treated as a petition for certiorari in the event it is found that the appeal was improperly taken. See 28 U. S. C. § 2103. The considerations which require dismissal of the appeal in this case also require denial of a petition for certiorari. See 28 U. S. C. § 1257 (3).

[4] The relevant provisions of the bylaws were as follows: "Section 1—Membership. Membership in this corporation shall be restricted to members who are approved by the Board of Directors for membership in this Club. There shall be two types of membership; one, the payment of a stipulated fee of $30.00 or more, plus tax, shall cover membership and greens fees. The other type of membership shall be $1.00, plus tax, but this type of member shall pay greens fees each time he uses the course. The greens fees and the

the appellants, who are Negroes, entered the club's golf shop and requested permission to play on the course. Their request was refused. Nevertheless, after placing some money on a table in the golf shop, the appellants proceeded to the course and teed off. After they had played several holes the manager of the golf course ordered them to leave. They refused. The manager then summoned a deputy sheriff, and, after the appellants were again ordered to leave the course and they had again refused, they were arrested upon warrants sworn to by the manager.

The appellants were tried and convicted of violating the state criminal trespass statute. Pending their appeal to the Supreme Court of North Carolina they and others commenced an action against the City of Greensboro, the Greensboro Board of Education, and the Gillespie Park Golf Club, Inc., in the Federal District Court for the Middle District of North Carolina, asking for a declaratory judgment and an injunction forbidding the defendants from operating the golf course on a racially discriminatory basis. The federal court granted the injunction. *Simkins* v. *City of Greensboro,* 149 F. Supp. 562. Its judgment was affirmed by the Court of Appeals for the Fourth Circuit on June 28, 1957. *City of Greensboro* v. *Simkins,* 246 F. 2d 425. On the same date the Supreme Court of North Carolina, acting on the appeal from the criminal convictions in the state court, held that there had been a fatal variance in amendments to the warrants under which the appellants had been tried, and arrested

---

amount of membership fees may be changed by the Board of Directors at any time upon two-thirds vote of the members of the Board.

"Section 2—Use of Golf Facilities. The golf course and its facilities shall be used only by members, their invited guests, members in good standing of other golf clubs, members of the Carolina Golf Association, pupils of the Professional and his invited guests."

the judgments against them. *State* v. *Cooke,* 246 N. C. 518, 98 S. E. 2d 885.

The appellants were again tried *de novo* in the Superior Court of Guilford County, North Carolina, for violating the state criminal trespass statute. At the outset they made a motion to quash, which was denied. The State presented evidence as to what had happened on the golf course on December 7, 1955. At the conclusion of the evidence the trial judge instructed the jury explicitly and at length that the defendants could not be convicted if they had been excluded from the golf course because of their race. Specifically, the trial judge charged the jury that ". . . the law would not permit the City and, there-fore, would not permit its lessee, the Gillespie Park Golf Club, Inc., to discriminate against any citizen of Greens-boro in the maintenance and operation and use of a golf course. It could not exclude either defendant because of his race or for any other reason applicable to them alone; that is to say, they were entitled to the same rights to use the golf course as any other citizen of Greens-boro would be provided they complied with the reasonable rules and regulations for the operation and maintenance and use of the golf course. They would not be required to comply with any unreasonable rules and regulations for the operation and maintenance and use of the golf course." [5] The jury returned a verdict of guilty. A motion to set aside the verdict was denied.

---

[5] The trial judge's instructions in their entirety on this aspect of the case were as follows:

"Now, if the State has satisfied you from the evidence and beyond a reasonable doubt that the land in question, that is the golf course property, was the land of the corporation, that it had the actual possession of the property and that the defendants entered upon the land intentionally and that they did so after being forbidden to do so by an agent or employee of the corporation who was authorized to tell them that they could not play golf, then, nothing else appearing,

The Supreme Court of North Carolina affirmed the convictions. In doing so the court recognized that "[s]ince the operator of the golf club was charged with making a public or semipublic use of the property, it could not deny the use of the property to citizens simply because they were Negroes. . . . Since the decision in *Brown* v. *Board of Education,* 347 U. S. 483 . . . separation of the races in the use of public property cannot be required." 248 N. C., at 491, 103 S. E. 2d 850–851. The court quoted with approval the trial judge's instructions to the jury on this aspect of the case. It is from this judgment of the Supreme Court of North Carolina that the present appeal was taken.

that would constitute a violation of the statute. However, although the State may prove beyond a reasonable doubt in a prosecution under this statute that the accused intentionally entered upon the land in the actual possession of the corporation after being forbidden to do so by an agent of the corporation and thereby establish as an ultimate fact that the accused entered the property without legal right, the accused may still escape conviction by showing as an affirmative defense that he entered under a bona fide claim of right.

"Bona fide claim of right means a claim of right in good faith or bona fide itself means in good faith. That is to say, when the defendants seek to excuse an entry without legal right as one taking place under a bona fide claim of right, then the burden is upon such defendant to show two things: not beyond a reasonable doubt or even by the greater weight of the evidence, but merely to the satisfaction of the jury, first, that he believed he had a right to enter; and, second, that he had reasonable grounds for such belief.

"Now, the defendants by their plea of not guilty deny their guilt of each and every element of the offense charged, but they further say and contend that even if it be found that the land in question was in the actual possession of the corporation and that they entered the land intentionally and that they did so and remained there after being forbidden to do so, they say that even if that be found that they did so under a bona fide claim of right and that they believed they had a right to enter and that they had reasonable grounds for such belief.

"Now, as to that question which arises upon the evidence, I instruct you then, ladies and gentlemen of the jury, that under the

The appellants contend that the Supremacy Clause and the Fourteenth Amendment required the North Carolina Court to hold that the findings of fact and judgment of the federal court in the civil case of *Simkins* v. *City of Greensboro,* 149 F. Supp. 562, conclusively established, contrary to the verdict of the jury in this case, that the state statute was used here to enforce a practice of racial discrimination by a state agency. The Supreme Court of North Carolina took cognizance of the federal court's published opinion in the *Simkins* case and commented with respect to it:

"Examining the opinion, it appears that ten people, six of whom are defendants in this action, sought

law as determined by the United States Court and as pronounced by them, the Gillespie Golf Club, Inc., by leasing the land from the City of Greensboro to use as a golf course was subjected to the same obligations as the City of Greensboro would have been had it operated a golf course itself. It was subjected to the same rights as the City would have had, the same obligations and same responsibilities; that is to say, the law would not permit the City and, therefore, would not permit its lessee, the Gillespie Park Golf Club, Inc., to discriminate against any citizen of Greensboro in the maintenance and operation and use of a golf course. It could not exclude either defendant because of his race or for any other reason applicable to them alone; that is to say, they were entitled to the same rights to use the golf course as any other citizen of Greensboro would be provided they complied with the reasonable rules and regulations for the operation and maintenance and use of the golf course. They would not be required to comply with any unreasonable rules and regulations for the operation and maintenance and use of the golf course.

. . . . .

"Furthermore, I instruct you that your verdict will not be prompted in any manner whatsoever by the race of the defendants. That has absolutely nothing to do with the case in law and should not be considered by you. Under the law, all citizens have equal rights and equal responsibilities in the maintenance and use of public facilities, that is facilities maintained by the governmental unit in which they live, and therefore the fact that the defendants are Negroes certainly may not be considered to their prejudice nor to the prejudice of the State."

injunctive relief on the assertion that Negroes were discriminated against and were not permitted to play on what is probably the property involved in this case. We do not know what evidence plaintiffs produced in that action. It is, however, apparent from the opinion that much evidence was presented to Judge Hayes [in the Federal District Court] which was not before the Superior Court when defendants were tried. It would appear from the opinion that the entry involved in this case was one incident on which plaintiffs there relied to support their assertion of unlawful discrimination, but it is manifest from the opinion that that was not all of the evidence which Judge Hayes had. We are left in the dark as to other incidents happening prior or subsequent to the conduct here complained of, which might tend to support the assertion of unlawful discrimination. On the facts presented to him, Judge Hayes issued an order enjoining racial discrimination in the use of the golf course. Presumably that order has and is being complied with. No assertion is here made to the contrary." 248 N. C., at 493, 103 S. E. 2d, at 852.

The North Carolina court did not decide, however, whether it was bound under the Constitution to give to the federal court's unpublished findings and judgment in the prior civil action the conclusive effect urged by the appellants in the present criminal case, because it held that as a matter of state law the findings and judgment were not before it.[6]

---

[6] Although not reaching the merits of the claim that the Constitution would compel it to hold that the federal judgment operated as a collateral estoppel in the present case, the North Carolina court discussed the question of collateral estoppel at some length in its opinion by way of *obiter dicta*:

"The mere assertion that a court of this State has not given due

It is settled that a state court may not avoid deciding federal questions and thus defeat the jurisdiction of this Court by putting forward nonfederal grounds of decision which are without any fair or substantial support.

recognition to a judgment rendered by one of our Federal courts merits serious consideration.

.        .        .        .        .

"When the doctrine of collateral estoppel should be applied is not always easily solved. In *Van Schuyver* v. *State*, 8 P. 2d 688, it was held that a judgment in a civil action between prosecuting witness and defendant which determined the ownership of domestic fowl could not be used by the defendant in a criminal action to estop the State from prosecuting him on a charge of larceny. Similar conclusions have been reached in other jurisdictions with respect to the ownership of property. *State* v. *Hogard*, 12 Minn. 293; *People* v. *Leland*, 25 N. Y. S.. 943; *Hill* v. *State*, 3 S. W. 764 (Tex.)

"It is said in the annotation to *Mitchell* v. *State*, 103 Am. St. Rep. 17: 'When the previous judgment arose in a case in which the state or commonwealth was the prosecutor or plaintiff and the defendant in the case at bar was also the defendant, and the judgment was with reference to a subject which is material to the case at bar, the doctrine of *res judicata* applies. (citations) But where the judgment to which it is sought to apply the doctrine of *res judicata* was rendered in a civil proceeding to which the state was not a party, or in a criminal proceeding to which the defendant in the case at bar was not a party, the doctrine of *res judicata* does not apply. (citations)'

"The Supreme Court of the United States has recognized and applied the law as there announced to differing factual situations. Compare *U. S.* v. *Baltimore & O. R. Co.*, 229 U. S. 244, 57 L. Ed. 1169, and *Williams* v. *N. C.*, 325 U. S. 226, 89 L. ed. 1577. Other illustrations may be found in: *S.* v. *Dula*, 204 N. C. 535, 168 S. E. 836; *Warren* v. *Ins. Co.*, 215 N. C. 402, 2 S. E. 2d 17; *Powers* v. *Davenport*, 101 N. C. 286; *S.* v. *Boland*, 41 N. W. 2d 727; *People* v. *McKenna*, 255 P. 2d 452; *S.* v. *Morrow*, 75 P. 2d 737; *S.* v. *Cornwell*, 91 A. 2d 456; *S.* v. *Greenberg*, 109 A. 2d 669. Extensive annotations appear as a note to *Green* v. *State*, 87 A. L. R. 1251; 30A Am. Jur. 518." 248 N. C., at 493, 495, 103 S. E. 2d, at 852, 853–854.

Compare what was said by this Court in *Hoag* v. *New Jersey*, 356 U. S. 464, 471: "Despite its wide employment, we entertain grave doubts whether collateral estoppel can be regarded as a constitutional requirement. Certainly this Court has never so held."

*N. A. A. C. P.* v. *Alabama,* 357 U. S. 449, 455; *Staub* v. *City of Baxley,* 355 U. S. 313, 318–320; *Ward* v. *Love County,* 253 U. S. 17, 22. Invoking this principle, the appellants urge that the independent state grounds relied upon for decision by the Supreme Court of North Carolina were untenable and inadequate, and that the question whether the Federal Constitution compelled that the findings and judgment in the federal case operated as a collateral estoppel in this case was properly before the state court for decision. It thus becomes this Court's duty to ascertain whether the procedural grounds relied upon by the state court independently and adequately support its judgment.

The Supreme Court of North Carolina stated in its opinion of affirmance that the "defendants for reasons best known to themselves elected not to offer in evidence the record in the Federal court case." 248 N. C., at 493, 103 S. E. 2d, at 852. This statement is borne out by the record before that court,[7] the so-called "case on appeal" prepared by the appellants themselves.[8] The appellants

---

[7] In North Carolina, "[t]he 'transcript or record on appeal' [to the Supreme Court] consists of [1] the 'record proper' (i. e., summons, pleadings, and judgment) and [2] the 'case on appeal,' which last is the exceptions taken, and such of the evidence, charge, prayers, and other matters occurring at the trial as are necessary to present the matters excepted to for review." *Cressler* v. *Asheville,* 138 N. C. 482, 485, 51 S. E. 53, 54. The "record proper" includes "only those essential proceedings which are made of record by the law itself, and as such are self-preserving," *State* v. *Gaston,* 236 N. C. 499, 501, 73 S. E. 2d 311, 313. The term "record" in this opinion refers, unless otherwise indicated, to that part of the record on appeal which is contained in the "case on appeal," *i. e.,* the transcript of the proceedings at the trial itself, containing the testimony of witnesses, proffers of evidence, exceptions and rulings thereon, etc., as selected and agreed upon by the parties.

[8] All that the record before the North Carolina court contained on this aspect of the case, here reproduced in its entirety, was "My name is Myrtle D. Cobb and I am Deputy Clerk in the Federal

now advise us that in fact the federal court's findings and judgment were offered in evidence at the trial and excluded by the trial judge. They ascribe to "some quirk of inadvertence" their failure to include in their "case on appeal" the part of the transcript which would so indicate.[9] And they assert that, since the Supreme Court

---

Court in Greensboro, and I have in my possession or it is my duty to keep in my possession public records concerning Federal cases and I do have in my possession the record in the case of Simkins, et al. v. The Gillespie Park Golf Course. I have all of the original papers in that case."

Eight pages later, following the transcript of the testimony of another witness, there appears in the record before the North Carolina court the following, also reproduced here in its entirety: "Mrs. Kennedy: If your Honor please, we'd like, if possible, to have a ruling on whether or not these would be admissible. Court: I am going to sustain the objection as to those two Exhibits, that is #6 and #7." There is nothing in the record before the North Carolina Supreme Court to indicate what "these" meant, and "Exhibits 6 and 7" were not further identified nor made part of the record as an offer of evidence as required by North Carolina law, *In re Smith's Will*, 163 N. C. 464, 79 S. E. 977, nor otherwise submitted to the Supreme Court of North Carolina.

[9] The appellants have included in an appendix to their brief an excerpt from the stenographic trial transcript. The trial transcript was made available to this Court after the argument, and the excerpt in question reads as follows:

"DIRECT EXAMINATION BY MRS. KENNEDY:

"Q. Will you state your name and address, please?

"A. I am Myrtle D. Cobb. I am deputy clerk in the Federal Court in Greensboro.

"Q. As Deputy Clerk in the Federal Court here in Greensboro, is it part of your duty to keep public records?

"A. Yes, it is.

"Q. Do you have a record in the case of Simkins, et al, vs. Gillespie Park Golf Course, et al?

"A. This is the case. It is all the original papers that went up to the Court of Appeals that was filed in our office.

"Q. Were the findings of fact part of that record?

"A. Yes.

of North Carolina has "wide discretion" to go outside the record in order to get at the true facts, the Court's refusal to do so here amounted to a refusal to exercise its discretion "to entertain a constitutional claim while passing upon kindred issues raised in the same manner." *Williams* v. *Georgia,* 349 U. S. 375, 383.

The difficulty with this argument, beyond the fact that the appellants apparently did not ask the North Carolina court to go outside the record for this purpose, is that that court has consistently and repeatedly held in criminal cases that it will not make independent inquiry to determine the accuracy of the record before it.[10]   Illustra-

---

"MRS. KENNEDY: Your Honor, at this time we'd like to offer into evidence a decree, the findings of fact, conclusions of law and opinion, as rendered by the Judge of the Federal Court, Middle District of Greensboro.

"MR. KORNEGAY: OBJECTION.

"THE COURT: Do you have anything further that you want to introduce in regard to that?

"MRS. KENNEDY: In addition to that, we have the opinion of the Circuit Court of Appeals on this case.

"MR. KORNEGAY: OBJECTION.

"THE COURT: Let the record show that is being offered in evidence. I will rule on it later.

"(The documents referred to were marked for identification DEFENDANTS' EXHIBITS 6 and 7.)

"THE COURT: Anything else?

"MRS. KENNEDY: Not with this witness, your Honor."

[10] In *civil* cases, the North Carolina Supreme Court, on motion of a party, has issued "a *certiorari* to give the [trial] Judge an opportunity to correct the 'case' already settled by him, [but] . . . such *certiorari* never issues (except to incorporate exceptions to the charge filed within ten days after adjournment: *Cameron* v. *Power Co.,* 137 N. C., 99) unless it is first made clear to the Court, usually by letter from the Judge, that he will make the correction if given the opportunity." *Slocumb* v. *Construction Co.,* 142 N. C. 349, 351, 55 S. E. 196, 197; *Sherrill* v. *Western Union Telegraph Co.,* 116 N. C. 655, 21 S. E. 429; *Broadwell* v. *Ray,* 111 N. C. 457, 16 S. E. 408; *Lowe*

tive decisions are: *State* v. *Robinson,* 229 N. C. 647, 50 S. E. 2d 740; *State* v. *Wolfe,* 227 N. C. 461, 42 S. E. 2d 515; *State* v. *Gause,* 227 N. C. 26, 40 S. E. 2d 463; *State* v. *Stiwinter,* 211 N. C. 278, 189 S. E. 868; *State* v. *Dee,* 214 N. C. 509, 199 S. E. 730; *State* v. *Weaver,* 228 N. C. 39, 44 S. E. 2d 360; *State* v. *Davis,* 231 N. C. 664, 58 S. E. 2d 355; *State* v. *Franklin,* 248 N. C. 695, 104 S. E. 2d 837.

Thus in the *Robinson* case the court reversed a criminal conviction for insufficiency of the evidence, although noting that:

> "[T]he court below, in its charge . . . referred to . . . incriminating facts and circumstances which do not appear in the testimony included in the record before us. This would seem to indicate that the record fails to include all the evidence offered by the State.
>
> "Be that as it may, the record on appeal imports verity, and this Court is bound thereby. (Citing cases.) This is true even though the case is settled by counsel (citing cases); and not by the judge (citing cases) . . . .
>
> "The Supreme Court is bound by the case on appeal, certified by the clerk of the Superior Court, even though the trial judge has had no opportunity to review it, and must decide questions presented upon the record as it comes here, without indulging in assumptions as to what might have occurred." 229 N. C., at 649–650, 50 S. E. 2d, at 741–742.

In *State* v. *Wolfe* the court reversed a criminal conviction on the ground of error in the trial court's instructions to the jury, although pointing out that:

> "The quoted excerpts from the charge do not reflect the clarity of thought and conciseness of state-

v. *Elliott,* 107 N. C. 718, 12 S. E. 383. Here, the case on appeal was not settled by the trial judge, and no motion for certiorari was made.

ment usually found in the utterances of the eminent and experienced jurist who presided at the trial below. . . . Even so, it [the record] is certified as the case on appeal. We are bound thereby and must decide the question presented upon the record as it comes here, without indulging in assumptions as to what might have occurred." 227 N. C., at 463, 42 S. E. 2d, at 516–517.

In the *Gause* case the court also reversed a conviction upon the ground of error in the charge, although noting that:

"Doubtless the use of the words 'greater weight of evidence' instead of 'beyond reasonable doubt' was a slip of the tongue or an error in transcribing. Nevertheless, it appears in the record, and we must accept it as it comes to us." 227 N. C., at 30, 40 S. E. 2d, at 466.

In the *Stiwinter* case, involving a similar issue, the court said:

"We are constrained to believe that this instruction has been erroneously reported, but it is here in a record duly certified . . . which imports verity, and we are bound by it." 211 N. C., at 279, 189 S. E., at 869.

The *Dee* case involved similar issues. There the court noted:

"It is suggested by the Attorney-General that, in all probability, a typographical error has crept into the transcript and that the word 'disinterested' was used where the word 'interested' appears. In this he is supported by a letter from the judge who presided at the trial, and upon this letter a motion for *certiorari* to correct the record has been lodged on behalf of the State . . . . [T]he transcript is not now

subject to change or correction. *State* v. *Moore,* 210 N. C., 686, 188 S. E., 421. It imports verity and we are bound by it. . . . 'Under C. S., 643, if the case on appeal as served by the appellant be approved by the respondent or appellee, it becomes the case and a part of the record on appeal, and in connection with the record [proper], may alone be considered in determining the rights of the parties interested in the appeal. . . . The appeal must be heard and determined on the agreed case appearing in the record.' " 214 N. C., at 512, 199 S. E., at 732.

It is thus apparent that the present case is not of a pattern with *Williams* v. *Georgia, supra.* Even if the North Carolina Supreme Court has power to make independent inquiry as to evidence proffered in the trial court but not included in the case on appeal, its decisions make clear that it has without exception refused to do so.[11]

---

[11] In *Aycock* v. *Richardson,* 247 N. C. 233, 100 S. E. 2d 379, and *Mason* v. *Moore County Board,* 229 N. C. 626, 51 S. E. 2d 6, the court went beyond the record for the restricted and quite different purpose of determining whether it had jurisdiction of the appeal, *i. e.,* to determine whether an appeal had been properly taken in accordance with North Carolina General Statutes §§ 1–279 and 1–280. In other cases the North Carolina Supreme Court has remanded a cause for completion of the record on appeal because the *record proper* (as opposed to the case on appeal) lacked certain primary essentials. *State* v. *Butts,* 91 N. C. 524 (record failed to show that a court had been held by a judge or that a grand jury had been drawn, sworn, and charged); *State* v. *Farrar,* 103 N. C. 411, 9 S. E. 449 (same); *State* v. *Daniel,* 121 N. C. 574, 28 S. E. 255 (record did not show the organization of the court below or when and where the trial had been held). See also *Kearnes* v. *Gray,* 173 N. C. 717, 92 S. E. 149. In the same category must be placed those cases in which the North Carolina Supreme Court, on motion of a party, remanded the cause for correction of the *record proper.* See *State* v. *Brown,* 203 N. C. 513, 166 S. E. 396 (error in the transcription of the verdict); *State* v. *Mosley,* 212 N. C. 766, 194 S. E. 486

This is not a case, therefore, where the state court failed to exercise discretionary power on behalf of appellants' "federal rights" which it had on other occasions exercised in favor of "kindred issues."

The appellants contend additionally that they brought the federal court's findings and judgment in the *Simkins* case before the state courts in two other ways: (a) by their motion to quash at the outset of the trial, and (b) by their motion to set aside the verdict at the trial's conclusion. The motion to quash set out the existence and alleged effect of the federal court proceedings, and requested leave to offer in evidence in support of the motion "the full record and judgment roll in said case." The motion to set aside the verdict incorporated by reference the motion to quash and also contained an independent summary of the federal court proceedings, requesting the court to take judicial notice of the same. Both motions were denied by the trial court without opinion.

As to the motion to quash, the Supreme Court of North Carolina sustained the trial court's ruling on the ground that the " 'court, in ruling on the motion, is not permitted to consider extraneous evidence. Therefore, when the defect must be established by evidence *aliunde* the record, the motion must be denied.' " 248 N. C., at 489, 103 S. E. 2d, at 849. In upholding the denial of the second motion, the Supreme Court of North Carolina declined to take judicial notice of the federal court's findings and judgment, for reasons discussed at some length in its opinion, and concluded that the appellants "were not, as a matter of right, entitled to have the verdict set aside."

(omission in the transcription of the verdict). See also *State* v. *Marsh*, 134 N. C. 184, 47 S. E. 6 (case reversed because of omission of part of the indictment in the record on appeal). As to the important distinction in North Carolina between the record proper and case on appeal, see n. 7, *supra*.

248 N. C., at 495, 103 S. E. 2d, at 854. An independent examination of North Carolina law convinces us that the state court in both instances was following well-established local procedural rules; it did not make an *ad hoc* determination operating discriminatorily against these particular litigants.

At least since the decision in *State* v. *Turner,* 170 N. C. 701, 86 S. E. 1019, in 1915, it has been the settled rule in North Carolina that "[a] motion to quash . . . lies only for a defect on the face of the warrant or indictment." 170 N. C., at 702, 86 S. E., at 1020. The rule that a motion to quash cannot rest on matters *dehors* the record proper has, so far as investigation reveals, been rigidly adhered to in all subsequent North Carolina decisions.[12] See *State* v. *Brewer,* 180 N. C. 716, 717, 104 S. E. 655, 656; *State* v. *Cochran,* 230 N. C. 523, 524, 53 S. E. 2d 663, 665; *State* v. *Andrews,* 246 N. C. 561, 565, 99 S. E. 2d 745, 748. In the present case the state court simply followed this settled rule of local practice.

A similar conclusion must be reached as to the denial of the motion made at the end of the trial. That motion requested "[t]hat the verdict rendered by the jury . . . be set aside, that the Court withhold and arrest judgment and discharge the defendants notwithstanding the verdict, or grant the defendants a new trial . . . ." Whether the

---

[12] There is a statutory departure from the settled rule. A North Carolina statute, enacted more than 70 years ago, providing that "[a]ll exceptions to grand jurors for and on account of their disqualifications shall be taken . . . by motion to quash the indictment, and if not so taken, the same shall be deemed to be waived." N. C. Gen. Stat. § 9–26. The North Carolina courts have held that when a motion to quash is employed to attack the qualification of grand jurors, the defendant may rely on evidence outside the record proper. See *State* v. *Gardner,* 104 N. C. 739, 10 S. E. 146; *State* v. *Peoples,* 131 N. C. 784, 42 S. E. 814; *State* v. *Speller,* 229 N. C. 67, 47 S. E. 2d 537; *Miller* v. *State,* 237 N. C. 29, 74 S. E. 2d 513; *State* v. *Perry,* 248 N. C. 334, 103 S. E. 2d 404.

motion be technically considered as one to set aside the verdict and grant a new trial or as one to arrest the judgment and dismiss the defendants, the action of the North Carolina Supreme Court in upholding its denial was clearly in conformity with established state law. "A motion to set aside the verdict and grant a new trial is addressed to the discretion of the court and its refusal to grant such motion is not reviewable on appeal." *State* v. *McKinnon,* 223 N. C. 160, 166, 25 S. E. 2d 606, 610; *State* v. *Chapman,* 221 N. C. 157, 19 S. E. 2d 250; *State* v. *Johnson,* 220 N. C. 252, 17 S. E. 2d 7. See also *State* v. *Wagstaff,* 219 N. C. 15, 19, 12 S. E. 2d 657, 660; *State* v. *Brown,* 218 N. C. 415, 422, 11 S. E. 2d 321, 325; *State* v. *Caper,* 215 N. C. 670, 2 S. E. 2d 864. "A motion in arrest of judgment can be based only on matters which appear on the face of the record proper, or on matters which should, but do not, appear on the face of the record proper. . . . The record proper in any action includes only those essential proceedings which are made of record by the law itself, and as such are self-preserving. . . . The evidence in a case is no part of the record proper. . . . In consequence, defects which appear only by the aid of evidence cannot be the subject of a motion in arrest of judgment." *State* v. *Gaston,* 236 N. C. 499, 501, 73 S. E. 2d 311, 313; *State* v. *Foster,* 228 N. C. 72, 44 S. E. 2d 447; *State* v. *Brown,* 218 N. C. 415, 422, 11 S. E. 2d 321, 325; *State* v. *McKnight,* 196 N. C. 259, 145 S. E. 281; *State* v. *Shemwell,* 180 N. C. 718, 721, 104 S. E. 885.

Examination of the whole course of North Carolina decisions thus precludes the inference that the Supreme Court of North Carolina in this case arbitrarily denied the appellants an opportunity to present their federal claim. The judgment before us for review is the judgment which the Supreme Court of North Carolina made on the record before it, not the action of the state trial

court. "Without any doubt it rests with each State to prescribe the jurisdiction of its appellate courts, the mode and time of invoking that jurisdiction, and the rules of practice to be applied in its exercise; and the state law and practice in this regard are no less applicable when Federal rights are in controversy than when the case turns entirely upon questions of local or general law. *Callan* v. *Bransford,* 139 U. S. 197; *Brown* v. *Massachusetts,* 144 U. S. 573; *Jacobi* v. *Alabama,* 187 U. S. 133; *Hulbert* v. *Chicago,* 202 U. S. 275, 281; *Newman* v. *Gates,* 204 U. S. 89; *Chesapeake & Ohio Railway Co.* v. *McDonald,* 214 U. S. 191, 195." *John* v. *Paullin,* 231 U. S. 583, 585. "[W]hen as here there can be no pretence that the [state] Court adopted its view in order to evade a constitutional issue, and the case has been decided upon grounds that have no relation to any federal question, this Court accepts the decision whether right or wrong." *Nickel* v. *Cole,* 256 U. S. 222, 225.[13]

A word of emphasis is appropriate, before concluding, to make entirely explicit what it is that is involved in this case, and what is not. There is no issue here as to the

---

[13] It has been suggested that even though the ground relied upon by the Supreme Court of North Carolina is an adequate state ground, this case should not be dismissed, but remanded because of a supervening "event." But there has been no significant "change, either in fact or law, which has supervened since the judgment was entered" by the Supreme Court of North Carolina. *Patterson* v. *Alabama,* 294 U. S. 600, 607. All that has happened is that the State Attorney General's Office, at this Court's request after argument, made available a transcript of the trial court proceedings which was stated to be accurate. But it has not been suggested that the State at any time has questioned that the transcript of the trial court's proceedings would reflect that the documents had in fact been offered in evidence in the trial court. See note 9. This case thus does not involve a situation where there has been an intervening change in fact or law. Compare *Gulf, C. & S. F. R. Co.* v. *Dennis,* 224 U. S. 503; *Pagel* v. *MacLean,* 283 U. S. 266; *State Tax Comm'n* v. *Van Cott,* 306 U. S. 511, 515–516.

constitutional right of Negroes to use a public golf course free of racial discrimination. From first to last the courts of North Carolina fully recognized that under the Constitution these appellants could not be convicted if they were excluded from the golf course because of their race. The trial judge so instructed the jury, and the Supreme Court of North Carolina so held. Cf. *Constantian* v. *Anson County,* 244 N. C. 221, 93 S. E. 2d 163. Upon the evidence in this case the jury's verdict established that no such racial discrimination had in fact occurred. "On review here of State convictions, all those matters which are usually termed issues of fact are for conclusive determination by the State courts and are not open for reconsideration by this Court. Observance of this restriction in our review of State courts calls for the utmost scruple." *Watts* v. *Indiana,* 338 U. S. 49, 50.

What is involved here is the assertion of a quite different constitutional claim—that the Supremacy Clause and the Fourteenth Amendment require a state criminal court to give conclusive effect to fact findings made in a civil action upon different evidence by a Federal District Court. While intimating no view as to the merits of this constitutional claim, we note only that it is a completely novel one. Cf. *Hoag* v. *New Jersey,* 356 U. S. 464, 470–471. The North Carolina Supreme Court did not decide this asserted federal question. We have found that it did not do so because of the requirements of rules of state procedural law within the Constitutional power of the States to define, and here clearly delineated and evenhandedly applied. We have no choice but to determine that this appeal must be dismissed because no federal question is before us. That determination is required by principles of judicial administration long settled in this Court, principles applicable alike to all litigants, irrespective of their race, color, politics, or religion.

*Dismissed.*

Mr. Chief Justice Warren, with whom Mr. Justice Black, Mr. Justice Douglas, and Mr. Justice Brennan join, dissenting.

I do not agree that the decision below rests on adequate nonfederal grounds. And—whether it does or not—it seems to me that the case should not be dismissed in view of developments since the argument.

The crucial holding below is that the North Carolina courts could not consider the *Simkins* [1] record because appellants "for reasons best known to themselves elected not to offer [it] in evidence." 248 N. C. 485, 493, 103 S. E. 2d 846, 852. It goes without saying that the procedural rule thus invoked—that appellants must rely on evidence which was offered at the trial—is, in itself, reasonable. In fact, that rule is elementary in most types of practice. The difficulty here lies not in the rule, but in its application to this case, on this record, and in the light of the fact, acknowledged by the State,[2] that appellants offered the *Simkins* record in evidence.

The relevant facts are few. When the federal court granted its injunction in *Simkins*, it found that appellants had been excluded from Gillespie Park on the occasion in question because they are Negroes. *Simkins* v. *City of Greensboro*, 149 F. Supp. 562, 565. As was held below, such exclusion, if established as a fact in *this* case, would be a complete defense to the State's trespass charge. 248 N. C., at 491–493, 103 S. E. 2d, at 851–852. Therefore, appellants offered the *Simkins* record in evidence during their trial.[3] They claimed, under the Supremacy Clause

---

[1] *Simkins* v. *City of Greensboro*, 149 F. Supp. 562, affirmed, *City of Greensboro* v. *Simkins*, 246 F. 2d 425.

[2] The State has stipulated to the accuracy of a stenographic trial transcript made available to the Court, after argument, at the Court's request. See the Court's opinion, note 9. Of course, the State denies that the transcript has any relevance to the issues before the Court.

[3] See the Court's opinion, notes 8, 9.

and the Fourteenth Amendment, that the federal court determination barred the state prosecution. However, the State objected to appellants' offer of proof, and the trial court sustained the objection.[4]   Thereafter, the jury convicted.

On appeal to the Supreme Court of North Carolina, appellants sought review of their contention that the federal court findings were binding on the State in the subsequent criminal proceedings.   At this point they made the mistake which deprived them of the opportunity to have that federal question reviewed.   They failed to include their offer of proof and the rejected exhibits in their case on appeal, although they did include the ruling on the State's objection.   With the resulting defective record before it, the State Supreme Court held that it could not review appellants' federal question because, as has been indicated, appellants "for reasons best known to themselves elected not to offer [the *Simkins* record] in evidence."

The Court holds that the state ground is adequate to support the decision below because, although we know the fact to be to the contrary, the assertion that appellants failed to offer the *Simkins* record in evidence "is borne out by the record" which the state court had before it.   I cannot read that record—appellants' case on appeal—as does the Court.   Therefore, I do not agree that the state ground is adequate.   But even if it were, it does not follow that the case must—or should—be dismissed.   Rather, the State's stipulation—a supervening event which may be of critical significance under North Carolina law—requires a different disposition, in the interests of justice, under controlling precedent.

*First.* It cannot be said, even on the defective record which the State Supreme Court had before it, that appel-

---

[4] See the Court's opinion, note 8.

lants "for reasons best known to themselves elected not to offer [the *Simkins* record] in evidence." On the contrary, appellants' case on appeal indicates clearly that appellants offered the *Simkins* record in evidence. When the portions of that record set out in the Court's opinion [5] are read as a whole with the entire case on appeal, it seems reasonably clear that the *Simkins* record was offered in evidence, that the State objected to the offer, and that the objection was sustained. Therefore, whether the result below could have been based on other grounds or not, the factual premise for the ground on which it *was* based lacks fair and substantial support in the record. *That* ground, therefore, is not adequate. Cf. *Creswill* v. *Grand Lodge,* 225 U. S. 246; *Union Pacific R. Co.* v. *Public Service Comm'n,* 248 U. S. 67; *Cedar Rapids Gas Light Co.* v. *Cedar Rapids,* 223 U. S. 655; see *United Gas Co.* v. *Texas,* 303 U. S. 123, 143. "Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis* v. *Wechsler,* 263 U. S. 22, 24. Since the *only* state ground mentioned in the opinion below is inadequate, this Court should either proceed directly to a consideration of the federal question or—if deemed desirable—should remand the case to the state court for further consideration.

*Second.* Even if the state ground were adequate, the case should not be dismissed. After the argument in this Court, the State furnished the Court with a copy of the actual stenographic transcript of the trial. The State stipulated to the accuracy of that transcript. The transcript shows, beyond peradventure, that the decision below was based "upon a supposed state of facts which does not exist." *Gorham* v. *Pacific Mut. Life Ins. Co.,* 215

---

[5] See the Court's opinion, note 8.

N. C. 195, 200, 1 S. E. 2d 569, 572. The North Carolina court apparently recognizes infirmity in its decisions in such cases. *State* v. *Marsh,* 134 N. C. 184, 47 S. E. 6. Therefore, the State's stipulation, an event "which has supervened since the judgment [below] was entered," may very well "affect the result." *Patterson* v. *Alabama,* 294 U. S. 600, 607. Accordingly, under firmly established principles, either the case should be remanded for a decision by the state court on the legal effect of the State's stipulation,[6] or we should decide this question of state law ourselves.[7] To take such action "is not to review, in any proper sense of the term, the decision of the state court upon a non-federal question, but only to deal appropriately with a matter arising since its judgment and having a bearing upon the right disposition of the case." *Patterson* v. *Alabama, supra,* at 607; *State Tax Comm'n* v. *Van Cott,* 306 U. S. 511, 515–516.

*Third.* It should not be assumed that *other* state grounds, not relied on below, would preclude reconsideration by the state court if the case were remanded. As has been indicated, the State's stipulation may create infirmity in the state court's decision, under North Carolina law. See *State* v. *Marsh, supra.* A remaining obstacle to appellate review of appellants' federal question, under North Carolina practice, may be the omission of the rejected exhibits from appellants' case on appeal. See *In re Smith's Will,* 163 N. C. 464, 79 S. E. 977. But records can be corrected. The Court refers us to cases which show that the North Carolina court may permit

---

[6] *Gulf, C. & S. F. R. Co.* v. *Dennis,* 224 U. S. 503; *Pagel* v. *MacLean,* 283 U. S. 266; *Patterson* v. *Alabama, supra; State Tax Comm'n* v. *Van Cott,* 306 U. S. 511; *New York ex rel. Whitman* v. *Wilson,* 318 U. S. 688; *Ashcraft* v. *Tennessee,* 322 U. S. 143, 155–156; *Williams* v. *Georgia,* 349 U. S. 375.

[7] *Missouri ex rel. Wabash R. Co.* v. *Public Service Comm'n,* 273 U. S. 126; *Steamship Co.* v. *Joliffe,* 2 Wall. 450.

corrections in the record proper [8] and in the case on appeal.[9] It may authorize corrections not only when fault is attributable to the lower court,[10] but also when it is chargeable to the parties.[11] It may do so pursuant to agreement between the parties [12] and pursuant to motion of one of the parties.[13] Indeed, it appears that it may be able to do so on its own motion.[14] Its power to inquire into the accuracy of the record before it is established—

---

[8] *State* v. *Mosley*, 212 N. C. 766, 194 S. E. 486; *State* v. *Brown*, 203 N. C. 513, 166 S. E. 396; *State* v. *Marsh, supra; State* v. *Daniel*, 121 N. C. 574, 28 S. E. 255; *State* v. *Farrar*, 103 N. C. 411, 9 S. E. 449, 104 N. C. 702, 10 S. E. 159; *State* v. *Butts*, 91 N. C. 524; cf. *Aycock* v. *Richardson*, 247 N. C. 233, 100 S. E. 2d 379; *Mason* v. *Moore County Board*, 229 N. C. 626, 51 S. E. 2d 6.

[9] *Cameron* v. *Power Co.*, 137 N. C. 99, 49 S. E. 76; *Arnold* v. *Dennis*, 131 N. C. 114, 42 S. E. 552; *Sherrill* v. *Western Union Tel. Co.*, 116 N. C. 654, 21 S. E. 400; *Broadwell* v. *Ray*, 111 N. C. 457, 16 S. E. 408; *Lowe* v. *Elliott*, 107 N. C. 718, 12 S. E. 383; cf. *Aycock* v. *Richardson*, 247 N. C. 233, 100 S. E. 2d 379; *Mason* v. *Moore County Board*, 229 N. C. 626, 51 S. E. 2d 6.

[10] *Cameron* v. *Power Co.*, 137 N. C. 99, 49 S. E. 76; *Sherrill* v. *Western Union Tel. Co.*, 116 N. C. 654, 21 S. E. 400; *Broadwell* v. *Ray*, 111 N. C. 457, 16 S. E. 408; *State* v. *Daniel*, 121 N. C. 574, 28 S. E. 255.

[11] *Arnold* v. *Dennis*, 131 N. C. 114, 42 S. E. 552; *State* v. *Daniel*, 121 N. C. 574, 28 S. E. 255.

[12] *Smith* v. *Capital Coca-Cola Bottling Co.*, 221 N. C. 202, 19 S. E. 2d 626; *Gorham* v. *Pacific Mut. Life Ins. Co., supra; Miller* v. *Scott*, 185 N. C. 93, 116 S. E. 86.

[13] *State* v. *Mosley*, 212 N. C. 766, 194 S. E. 486; *State* v. *Brown*, 203 N. C. 513, 166 S. E. 396; *Cameron* v. *Power Co.*, 137 N. C. 99, 49 S. E. 76; *State* v. *Marsh, supra; Sherrill* v. *Western Union Tel. Co.*, 116 N. C. 654, 21 S. E. 400; *Broadwell* v. *Ray*, 111 N. C. 457, 16 S. E. 408.

[14] See *Aycock* v. *Richardson*, 247 N. C. 233, 100 S. E. 2d 379; *Mason* v. *Moore County Board*, 229 N. C. 626, 51 S. E. 2d 6; *State* v. *Butts,* 91 N. C. 524; *State* v. *Daniel*, 121 N. C. 574, 28 S. E. 255; *State* v. *Farrar*, 103 N. C. 411, 9 S. E. 449, 104 N. C. 702, 10 S. E. 159.

to some extent at least—by recent decisions,[15] and its power to order the lower courts to send up "additional papers and parts of the record" is explicitly recognized by its rules.[16] Therefore, the state court *could* permit a correction of the record—and consequently could decide the federal question—if the case were remanded.

It is true that there is language in North Carolina cases, to which the State has called our attention, that indicates that a record settled by agreement—rather than by the trial court—may only be corrected by agreement. See *Smith* v. *Capital Coca-Cola Bottling Co.*, 221 N. C. 202, 19 S. E. 2d 626; *Gorham* v. *Pacific Mut. Life Ins. Co.*, *supra*. And language from *State* v. *Dee*, 214 N. C. 509, 512, 199 S. E. 730, 732, quoted by the Court in another connection, suggests that the state court is disinclined to permit the correction of a defective record when the case on appeal is settled by the parties. But these cases are not in point in the circumstances of the case before us.

The rule stated in *Smith* and *Gorham*—that a record settled by agreement can only be corrected by agreement—is subject to a very relevant qualification. For in *Gorham*, the North Carolina court observed, in denying a losing party's request for a certiorari to correct the record, that:

"[T]here is no concession on the part of the [prevailing party] that the case has been decided 'upon a sham issue,' or 'upon a supposed state of facts which does not exist,' nor yet upon a misconception of the record. *Cook* v. *Mfg. Co.*, [183 N. C. 48, 110

---

[15] *Aycock* v. *Richardson*, 247 N. C. 233, 100 S. E. 2d 379; *Mason* v. *Moore County Board*, 229 N. C. 626, 51 S. E. 2d 6.

[16] N. C. S. C. Rule 19 (1). Rule 19 (1) sets out the requirements as to form and content of transcripts on appeal. After setting out these requirements, it recites: "Provided, further, that this rule is subject to the power of this Court to order additional papers and parts of the record to be sent up."

S. E. 608]; *S. v. Marsh, [supra]*. These are allegations of the [losing party], and [the prevailing party] says they rest only in allegation. She further says that the interpretation placed upon the record 'was and is absolutely correct'; . . . and that the transcript admits of no other interpretation." 215 N. C., at 200, 1 S. E. 2d, at 572.

Here, on the other hand, the State has stipulated to facts which *do* establish that the case was decided below "upon a supposed state of facts which does not exist." That is precisely what the prevailing party in *Gorham* did not concede. This case, therefore, is governed by *Cook* and *Marsh*, not by *Gorham*.

Likewise, in *Dee*, the North Carolina court denied the State's request for a certiorari to correct an alleged error in the case on appeal. But in *Dee*, as in *Gorham*, the prevailing party did not concede that there was any error in the record. In fact, the court itself expressed skepticism about the State's claim:

"It is suggested by the Attorney-General that, in all probability, a typographical error has crept into the transcript and that the word 'disinterested' was used where the word 'interested' appears. In this he is supported by a letter from the judge who presided at the trial, and upon this letter a motion for *certiorari* to correct the record has been lodged on behalf of the State. The solicitor apparently took a different view of the matter when he agreed to the statement of case on appeal with an exception pointed directly to the expression." 214 N. C., at 512, 199 S. E., at 732.

On these facts, quite different from those before us, it is perhaps understandable that the state court refused to entertain the State's appeal to its discretion.

Therefore, it appears that if the case were remanded, appellants would very likely be permitted to correct their

case on appeal, in view of the State's stipulation. And, as has been indicated, a correction could now be allowed even if the State objected to it. But I am sure that the State would not object, for North Carolina has no interest in depriving its citizens of their liberty on assumptions that do not accord with fact. It seems clear, therefore, that under North Carolina law, appellants may yet have their federal question reviewed—unless we dismiss.[17]

[17] Under my view of the case, it is unnecessary to decide whether the North Carolina court's broad powers with respect to the record, and the evidence of their frequent exercise in the interests of justice, see notes 8–16, *supra*, are consistent with the Court's rejection of appellants' argument, based on *Williams* v. *Georgia*, 349 U. S. 375, that the North Carolina court should have gone outside the record to get at the truth as it has in some other cases. *E. g., Aycock* v. *Richardson*, 247 N. C. 233, 100 S. E. 2d 379.

However, it may be worth noting in this connection that there is no relevant distinction between criminal cases like this one and civil cases like *Aycock*. Cf. the Court's opinion, note 10. The same statute, said to limit the power of the state court to go outside the record, see *State* v. *Dee, supra,* at 512, 199 S. E., at 732 (quoted by the Court), is equally applicable to either type of case. Likewise, the apparently inflexible rule stated in the criminal cases cited by the Court is also stated in numerous civil cases. See, as representative, *Hagan* v. *Jenkins,* 234 N. C. 425, 67 S. E. 2d 380; *Bame* v. *Palmer Stone Works,* 232 N. C. 267, 59 S. E. 2d 812. The same precedents are applicable in both types of case. See, for example, *Bame* v. *Palmer Stone Works, supra,* and conversely, the *Dee* and *Weaver* cases cited by the Court. Therefore, if the rule stated in the criminal decisions relied on by the Court is as inflexible as it purports to be, it should be equally so in civil cases. Yet *Aycock* shows that the rule is less rigid in fact than in articulation.

The Court also distinguishes *Aycock* because there the state court went outside the record to verify an apparent lack of jurisdiction. See the Court's opinion, note 11. However, so far as has been called to our attention, the North Carolina court has never suggested such a distinction. It would seem more logical, therefore, to assume that if the state court can go outside the record where it apparently lacks jurisdiction, it can do so where its jurisdiction is clear.

In view of the federal court finding that the appellants were excluded from Gillespie Park because of their race, these convictions give rise to serious constitutional doubts. Unless dismissal cannot be avoided, the appellants should not be deprived of their liberty without being heard on their federal question. Our own precedents require that we either remand the case or decide the questions which it presents.